[No. S001335. Aug. 22, 1988.]

ROBERT L. WEBSTER, JR., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ROXANI E. GILLESPIE, as Insurance Commissioner, etc., et al.,
Real Parties in Interest.

3 seconds340

3 seconds---

**COUNSEL**

Conrad G. Tuohey, Teresa M. Ferguson, Gene R. Prasse, Tuohey & Prasse, Richard C. Bennett and Bennett & Johnson for Petitioners.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Raymond B. Jue, Deputy Attorneys General, Royal F. Oakes, John C. Holmes, Barger & Wolen, Jane A. Corning and Lynch, Loofbourrow, Helmenstine, Gilardi & Grummer for Real Parties in Interest.

---

**OPINION**

EAGLESON, J.—The issues in this case are whether an insurance company's insolvency proceeding under the California Insurance Code requires a stay of a personal injury action against the company, even when the company itself is insured by another carrier for the claim and, if not, whether the stay of petitioners' personal injury action against an insolvent insurer was an abuse of the trial court's discretion. We hold that a stay is not mandated by the governing statutes but that a personal injury claimant must make a binding election as to whether he is seeking to recover from the insolvent's own assets or from the proceeds of its insurance coverage. If he elects to recover only from the insurance proceeds, he must be allowed to maintain an independent civil action for damages. If, however, he elects to seek recovery in whole or in part from the insolvent's assets, his action may be stayed and his claim resolved by the insurance commissioner under the insolvency claims procedures set forth in the Insurance Code. Because petitioners offered to stipulate that they would seek no recovery from the insolvent's assets, we find the stay of their action was an abuse of the trial court's discretion, and we reverse the judgment of the Court of Appeal.

### FACTS

Petitioner Robert L. Webster, Jr. (Webster) was critically wounded in a shooting rampage in January 1982 at the San Francisco offices of his employer, Mission Insurance Company (Mission). Mission shared offices with Enterprise Insurance Company (Enterprise). The estranged husband of an Enterprise employee entered the offices, pulled a shotgun from a flower box, and shot his wife and several other persons. Webster sought refuge under his desk and called an emergency assistance telephone operator. The gunman spotted Webster, cursed him for calling the police, and blasted him in the back at close range. Police arrived and killed the gunman.

Webster suffered severe internal injuries and was confined to a hospital for almost eight months. He lost the use of his only leg. He had already lost his other leg and his sight in one eye while serving in the United States armed forces in Vietnam.

Webster, his wife, and daughter filed suit in San Francisco Superior Court against the owners of the office building where the shootings occurred, the gunman's estate, his wife, and numerous Doe defendants. (For convenience, we refer collectively to plaintiffs as Webster.) Other victims of the shootings filed similar lawsuits in San Francisco Superior Court, which consolidated all the actions for pretrial discovery and trial on the issue of liability. Webster served Enterprise as one of the Doe defendants in his action after pretrial discovery allegedly revealed that Enterprise had been warned of the gunman's potential dangerousness, including threats against his wife's coworkers, but had failed to take any precautions or to warn its employees of the threats.

Enterprise had liability insurance coverage for Webster's suit. Great American Insurance Company provided Enterprise with primary coverage of $500,000. First State Insurance Company provided Enterprise with excess coverage of $20 million. Enterprise's insurers provided and paid for the defense of Webster's action.[1]

While Webster's action was proceeding, the Insurance Commissioner of the State of California (commissioner) obtained an order from the Los Angeles Superior Court placing Enterprise under the commissioner's conservatorship pursuant to the Insurance Code. The order stated, ". . . all persons are hereby enjoined from maintaining or instituting any action at law or suit in equity . . . ." against Enterprise or the commissioner.

Webster filed a motion in the Los Angeles Superior Court for relief from the stay. He argued that any judgment he might obtain against Enterprise would not affect its assets because the judgment would be paid by its liability insurers. The commissioner and Enterprise opposed the motion on the grounds that: (1) lifting the stay would interfere with the commissioner's administration of Enterprise; (2) Webster should not be given an unfair advantage over other claimants; and (3) Webster was required to resort to the statutory claims procedures of the Insurance Code. The court denied Webster's motion without prejudice to the filing of a second motion if new facts were discovered. Webster renewed his motion without showing new facts. He did offer, however, to stipulate that he would not seek to recover

---

[1] Enterprise and its primary insurer, Great American Insurance Company, have a common owner as follows: Great American Insurance Company is a wholly owned subsidiary of Great American Holding Company, which is a wholly owned subsidiary of American Financial Corporation, which owns 49.9 percent of the outstanding stock of Mission Insurance Group, Inc., which through a series of wholly owned subsidiaries, owns Enterprise. One can reasonably assume that an insolvent company generally is not concerned that its liability insurer may have to pay a judgment. The common ownership in this case, however, suggests that Enterprise would be motivated to protect its insurer's interest because, to the extent Enterprise's insurer can avoid payment to Webster, Enterprise's parent company is benefitted.

from Enterprise's assets without prior court approval. The court denied the second motion with prejudice.

Webster petitioned the Court of Appeal for a writ of mandate setting aside the denial of his motion to lift the stay. The Court of Appeal summarily denied relief. We granted Webster's petition for review and transferred the matter to the Court of Appeal with directions to issue an alternative writ. While the action was before the Court of Appeal, the San Francisco Superior Court vacated the scheduled trial date for the consolidated actions, including Webster's, and ordered that the plaintiffs file a new at-issue memorandum if and when the Los Angeles Superior Court's stay was lifted.

In February 1987, the commissioner applied for an order allowing her to liquidate Enterprise based on her determination that further efforts to rehabilitate the company would be futile. The Los Angeles Superior Court appointed the commissioner as liquidator, authorized her to liquidate the company, and continued the stay of actions against Enterprise.

The Court of Appeal held the Los Angeles Superior Court did not abuse its discretion in denying Webster's request to lift the stay of his action against Enterprise. We granted review a second time.

## DISCUSSION

### A. Insurance Code Section 1020 Does Not Mandate a Stay of Webster's Action.

#### 1. The statutory language and context do not mandate a stay.

We reject the contention of Enterprise and the commissioner that section 1020 mandates a permanent stay of Webster's action against Enterprise.[2] Section 1020 states that, either with or after the issuance of an order of conservatorship or liquidation, ". . . the court *shall* issue such other injunctions or orders *as may be deemed necessary* to prevent *any or all* of the following occurrences [including] . . . the institution or prosecution of any actions or proceedings." (Italics added.) Enterprise relies on the mandatory character of the word "shall" to support its argument that a court must permanently stay all actions against an insolvent insurer. Enterprise reads section 1020 too broadly and out of context. As we will explain, the more reasonable conclusion is that courts have discretion whether to stay pending actions. ■ When two statutory constructions appear possible, this court's policy has long been to favor the construction that leads to the more reasonable result. (*Metropolitan Water Dist.* v. *Adams* (1948) 32 Cal.2d 620, 630-631 [197 P.2d 543].)

---

[2] All statutory references are to the California Insurance Code unless indicated otherwise.

We begin with the words of section 1020. It provides that a court shall issue such injunctions or other orders as may be deemed necessary to prevent "any or all" of certain enumerated occurrences, including interference with the commissioner or the insolvency proceedings, waste of the insolvent's assets, the institution or prosecution of actions, the obtaining of preferences, and the making of a levy against the insolvent or its assets. ■ Enterprise's reliance on the word "shall" in section 1020 ignores the principle that " 'The mere literal construction of a section in a statute ought not to prevail if it is opposed to the intention of the legislature apparent by the statute . . . .' " (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049] quoting *In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883].) We agree with Justice Frankfurter that statutes "are not inert exercises in literary composition. They are instruments of government, and in construing them 'the general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down.' " (*United States* v. *Shirey* (1959) 359 U.S. 255, 260 [3 L.Ed.2d 789, 793, 79 S.Ct. 746] quoting *United States* v. *Whitridge* (1905) 197 U.S. 135, 143 [49 L.Ed. 696, 698, 25 S.Ct. 406].) That legislative intent must prevail over literal interpretation is reflected in section 16, which states: "As used in this code the word 'shall' is mandatory and the word 'may' is permissive, *unless otherwise apparent from the context*." (Italics added.) ■ Neither the context of section 1020 nor its purpose requires a permanent stay of all actions against an insolvent insurer.

Section 1020 reflects a legislative intent to preserve an insolvent insurer's assets for orderly disposition by the commissioner.[3] For example, section 1020 provides that the court shall issue injunctions and orders as deemed necessary to prevent: "(a) Interference with the commissioner or the [insolvency] proceeding. (b) Waste of assets of such person. . . . (d) The obtaining of preferences, judgments, attachments, or other liens against such person or its assets." The statute does not suggest the Legislature intended that a court must issue an injunction unnecessary to preserve assets or to provide for an orderly liquidation. We do not attribute to the Legislature an intent to require an unnecessary act. To construe section 1020 to require a stay of all actions of whatever kind against an insolvent insurer, regardless of the facts, would be to reach a result broader than that intended by the Legislature. ■ "The courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers." (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 813 [114 Cal.Rptr. 577, 523 P.2d 617].)

---

[3] We use the term "insolvent insurer" to mean an insurer who has been placed in conservatorship or liquidation proceedings pursuant to sections 1010 to 1062, inclusive.

To construe section 1020 to divest the courts of all discretion as to whether a stay is necessary would also be contrary to the hornbook principle that an injunction or stay is an equitable remedy. (*Meridian, Ltd.* v. *San Francisco* (1939) 13 Cal.2d 424, 447 [90 P.2d 537].) The granting or denying of an injunction or stay necessarily requires a court to exercise its equitable discretion. This principle was already well established when the Legislature enacted section 1020 in 1935 and was implicitly acknowledged in section 1020's provision that a court shall stay actions "as may be deemed necessary." The Legislature may under certain circumstances guide or control the exercise of the courts' equitable discretion, but absent a clear and unmistakable indication that the Legislature has chosen to do so, we find that section 1020 does not eliminate the courts' discretion whether to enjoin or stay an action against an insolvent insurer.

As explained, we believe the more reasonable interpretation of section 1020 is that a stay is discretionary. Moreover, the interpretation of section 1020 urged by Enterprise would lead to a wide variety of unacceptable results. For example, employees of an insolvent insurer might have workers' compensation claims for injuries. The Workers' Compensation Appeals Board has exclusive jurisdiction over such claims. (Lab. Code, § 5300.) If the insolvency statutes were construed to give the liquidation court exclusive jurisdiction of all claims, including those for workers' compensation, there would be a clear conflict between the Labor and Insurance Codes. Enterprise's literal interpretation of section 1020 could also lead to results disadvantageous to an insolvent insurer. Subdivision (c) refers to the stay of, "[t]he institution or prosecution of *any* actions or proceedings." (Italics added.) The section does not limit actions to those *against* the insolvent insurer. Under Enterprise's literal interpretation, a court would have to stay an action *by* the insolvent insurer or by the commissioner on its behalf, even if the action might result in a substantial recovery to the insurer. Such result could not be what the Legislature intended and is not the law. (*Kinder* v. *Superior Court* (1978) 78 Cal.App.3d 574 [144 Cal.Rptr. 291] [action by commissioner on behalf of insurer].)

Perhaps most important, to interpret section 1020 to require a stay regardless of the circumstances would put the liquidation court in a procedural straitjacket. The court could not allow a pending action to go forward even when doing so might expedite matters or conserve the commissioner's resources. An extreme example would be the situation in which a complex action against the insolvent is in the midst of trial when the insolvent is placed under the commissioner's conservatorship. The best interests of all concerned might be served by allowing the action to proceed to its conclusion rather than requiring the commissioner to begin anew a resolution of the claim against the insolvent. (Of course, the insolvency court could protect the insolvent's assets with appropriate orders.)

That the Legislature did not intend section 1020 to require a stay in every conceivable situation is suggested by several other insolvency statutes. Section 1037, subdivision (f) states that the commissioner may "prosecute *and defend* any and all suits and legal proceedings" related to an insurer's insolvency proceeding. (Italics added.) This provision allowing the commissioner to defend actions against an insolvent insurer would be meaningless if all such actions were required to be stayed. Section 1058 states that the court in which the liquidation proceeding is pending has jurisdiction to hear and determine "all actions or proceedings then pending or thereafter instituted by *or against*" the insolvent insurer. (Italics added.) If no actions against an insolvent insurer could be prosecuted, section 1058 would be of little effect.

A stay of Webster's action also might conflict with section 11580, which deals with the insolvency of *insureds.* Enterprise admits it has $20.5 million of liability insurance for the events giving rise to Webster's action. Enterprise is both an insured and an insurer. For purposes of section 11580, its status as an *insured* is controlling. Section 11580 requires that a personal injury liability insurance policy issued in California must contain "[a] provision that the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy." (§ 11580, subd. (b)(1).) Section 11580 also has a "direct action" provision, which states, ". . . whenever judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and conditions, by such judgment creditor to recover on the judgment." (§ 11580, subd. (b)(2).)(6) The purpose of this statute is to protect an injured person when an insured tortfeasor is insolvent. (*Hynding* v. *Home Acc. Ins. Co.* (1932) 214 Cal. 743, 746 [7 P.2d 999, 85 A.L.R. 13].)

■ If Webster were precluded from maintaining his suit, the practical result might be that Enterprise's insurers would be released from payment of damages for Webster's injuries, contrary to the express provisions of section 11580. Enterprise contends this will not happen because Webster will be allowed to participate in a statutory claims proceeding and then can seek payment from Enterprise's insurers of any award he obtains from the commissioner. Enterprise's argument is based on two questionable premises.

First, whether the claims procedure would allow Webster to recover from Enterprise's insurers in a subsequent direct action under section 11580, subdivision (b)(2) would depend on whether he could obtain a final judgment against Enterprise within the meaning of that section. Webster argues that, if he were forced to submit to the claims procedure, he could not

obtain a *judgment* and would thus lose his right to bring a direct action against Enterprise's insurers. Enterprise contends Webster could obtain a court order under section 1032 confirming an award in the claims proceeding and that such an order would be the equivalent of a judgment for purposes of the direct action statute. Enterprise relies on Code of Civil Procedure section 680.230, which states, " 'Judgment' means a judgment, order, or decree entered in a court of this state."

We are not persuaded that an order confirming an award by the commissioner would necessarily be sufficient for a subsequent direct action against Enterprise's insurers. Section 1032 states only that, if the commissioner rejects a claim, the claimant may apply for an order to show cause why the claim should not be allowed.[4] Section 1032 does not state that a claimant can obtain an order affirming an award by the commissioner. That aside, we are not certain that an insolvent's insurer would be bound by an order of the liquidation court. On another point, Enterprise argues that in the liquidation proceeding the commissioner rules on claims in a summary show-cause procedure without a trial. If a claim were granted after such a proceeding, Enterprise's insurers might have a good defense in a direct action that an order arising out of a summary procedure is not the equivalent of a judgment because the order does not reflect a full and fair adjudication of the claim against the insolvent insured. The United States Supreme Court has noted this problem in finding that a personal injury action against an insured bankrupt should not be stayed. (*Foust* v. *Munson S. S. Lines* (1936) 299 U.S. 77, 87 [81 L.Ed. 49, 56, 57 S.Ct. 90].) The high court explained that, if an injured plaintiff is precluded from obtaining a full trial of his action, "grave doubts will arise as to the liability of the [bankrupt's] insurer." (*Ibid.* [81 L.Ed. at p. 55].) We share that concern.[5]

Second, even if Webster could obtain a binding judgment, he might be prejudiced as to its amount. The insolvency statutes are not clear as to whether the amount of an award in a statutory claims proceeding is the amount of the insolvent's obligation or the amount that will actually be paid out of the insolvent's assets. Claims in bankruptcy and insolvency proceedings, however, are often reduced to a small fraction of their true value, perhaps only pennies on the dollar. If the amount of an award in the statutory proceeding is only the amount the commissioner will actually pay

---

[4] Section 1032 provides: "When a claim is rejected by the commissioner, written notice of rejection shall be given by mail, addressed to the claimant at the address set forth in his claim. Within 30 days after the mailing of the notice the claimant may apply to the court in which the liquidation proceeding is pending for an order to show cause why the claim should not be allowed."

[5] The issue of whether an insurer could avoid liability on that ground in a subsequent direct action is not squarely before us, however, and we do not decide the issue. We merely note the likelihood of the problem.

on the claim, Webster would be seriously prejudiced if he were limited to collecting that amount from Enterprise's insurers. Conversely, those insurers would avoid paying damages to the extent Webster receives less in the statutory claims proceeding than he would in an ordinary civil action.[6] Such windfall to Enterprise's insurers would be contrary to the purpose of section 11580 of avoiding prejudice to a personal injury victim as a result of his insured tortfeasor's insolvency.[7]

To construe section 1020 to require a permanent stay of all actions would be inconsistent with sections 1037 and 1058 and might conflict with section 11580 when the insolvent insurer itself is insured. ■ "Statutes which are apparently in conflict should, if reasonably possible, be reconciled." (*Associated Home Builders, Etc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 596 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].) Equally important is the principle that, " '[A] statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among the parts . . . .' " (*People* v. ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) We decline to create unnecessary inconsistencies, either actual or potential, within the Insurance Code by stripping the courts of their discretion to issue stays, especially when neither the language nor context of section 1020 nor the Legislature's apparent purpose requires such an abrogation of the courts' discretion.

*2. Stays are not required in similar insolvency proceedings.*

Although the issue presented by this case is one of first impression in California, we find guidance in several related areas. In *Slotkin* v. *Brookdale Hospital Center* (S.D.N.Y. 1972) 357 F.Supp. 705, the court refused to dismiss a fraud action against an insurer. The insurer was in liquidation proceedings in a New York state court, which had enjoined all persons from prosecuting actions against the insurer. The federal court, however, found that the fraud action before it would not interfere with the liquidation. It characterized the insolvent's assets as a *res* and explained, "This cause of action, to decide [the amount of] a claim against funds being administered by the State court, in no way interferes with the State's custody or control of the *res*." (*Id.*, at p. 707-708.) Such reasoning is even more forceful in the present case, in which the eventual recovery, if any, will be from Enterprise's insurers.

---

[6] By referring to Webster's "claim," its "amount," and his "damages," we express no opinion as to the merit of his personal injury action against Enterprise or the amount of his damages, if any.

[7] Our concern with whether a determination by the commissioner would be binding on Enterprise's insurers would also apply if the commissioner were to award Webster more than the amount he would actually receive in the statutory claims proceeding. Enterprise's insurers likely would object to the amount of the award.

██ The United States Supreme Court and other federal courts have held that a stay under bankruptcy law should not preclude a plaintiff from maintaining a lawsuit for personal injuries against a bankrupt tortfeasor if the plaintiff's eventual recovery will be paid by the bankrupt's insurer.[8] In *Foust* v. *Munson S. S. Lines, supra,* 299 U.S. 77, the high court held on facts very similar to those in this case that it was an abuse of discretion not to lift the stay of a suit for an employee's injuries. The plaintiff was the administrator of the estate of a deceased employee, allegedly killed by his employer's negligence. After the plaintiff had commenced a suit against the employer, it filed for bankruptcy, and the bankruptcy court enjoined further prosecution of the personal injury suit. The plaintiff was seeking judgment primarily so that he could then file a direct action under state law against the bankrupt's insurer. As in this case, the bankrupt was being defended in the personal injury action by its liability insurer. The high court found the plaintiff's claim could be enjoined under bankruptcy law but that, "[t]he power to stay does not imply that it is to be, or appropriately may be, exerted without regard to the facts." (*Id.* at p. 83 [81 L.Ed. at p. 53].) The court ordered that the stay be lifted.

The facts of the present case weigh even more strongly against a stay. In *Foust, supra,* 299 U.S. 77, the bankrupt's insurance policy was subject to a $2,500 deductible, and the plaintiff's claim was for no more than $5,000. Thus, one-half or more of the plaintiff's claim would not be paid by insurance, and the plaintiff refused to stipulate that he would not seek to recover the noninsured portion of any judgment from the bankrupt's assets. The court nevertheless found the suit would not "hinder, burden, delay or be at all inconsistent with" the bankruptcy proceeding. (*Id.,* at p. 87 [81 L.Ed. at p. 56].) Because Webster seeks no recovery from Enterprise's assets (and, as we will explain, will not be allowed to seek such recovery), the result in *Foust* is even more appropriate in this case.

The Seventh Circuit reached the same result in *Matter of Holtkamp* (7th Cir. 1982) 669 F.2d 505, 508-509, in which the bankrupt's insurer had assumed full financial responsibility for defending the plaintiff's personal injury suit. The court found that the suit would not interfere with the bankruptcy proceeding and affirmed an order lifting a stay of the suit. (See also *Matter of Nkongho* (N.J. 1986) 59 Bankr. 85, 86; *In Re Celectro-Knit Fabrics, Inc.* (S.D.N.Y. 1982) 24 Bankr. 326, 328.)

---

[8] The Bankruptcy Code does not govern this action because a domestic insurance company cannot be a debtor under the Bankruptcy Code. (11 U.S.C. § 109(b)(2) and (d).) Bankruptcy, however, is sufficiently analogous to Enterprise's insolvency proceeding to be illustrative. With a few narrow exceptions, the filing of a petition for bankruptcy operates as an automatic stay of all judicial proceedings against the debtor. (11 U.S.C. § 362(a)(1).) A bankruptcy court, however, "shall grant relief from the stay" for cause. (11 U.S.C. § 362(d)(1).)

California's probate statutes are also illustrative because they are unquestionably intended to preserve a probate estate for orderly distribution, a goal similar to that of the insolvency statutes. Probate Code section 709, however, provides that an action pending against a decedent at the date of death may proceed outside the probate proceedings to the extent the claim is covered by liability insurance. Probate Code section 721 makes similar provision for actions commenced after the date of death. ▮ These provisions reflect a legislative understanding that a party who seeks ultimate recovery from a defendant's insurer does not in any realistic way threaten the defendant's assets.

▮ We hold that the Insurance Code provisions regarding an insurer's insolvency, including section 1020, do not mandate a stay of an action against an insolvent insurer in conservatorship or liquidation proceedings. Courts have discretion to determine whether to stay an action against the insolvent insurer and, if so, under what terms and conditions.

### B. Webster Should Have Been Allowed to Maintain His Action Against Enterprise.

The fundamental purpose of section 1020 is to preserve the assets of an insolvent insurer for orderly distribution. ▮ Because Webster will be allowed to recover only from Enterprise's insurers and because they are responsible for defending Enterprise, Webster's action will neither deplete Enterprise's assets nor disrupt an orderly distribution. The claims of Enterprise and the commissioner to the contrary are untenable.

### 1. Enterprise's assets will be preserved.

Enterprise does not dispute that it has $20.5 million of liability insurance coverage. Enterprise argues, however, that despite such coverage, its assets may be threatened because, if the stay of Webster's action is lifted, other parties who have initiated actions arising out of the 1982 shootings will be allowed to proceed with their actions, and cumulative judgments in excess of the total insurance coverage are possible. Enterprise speculates that the excess would have to be paid out of Enterprise's assets to the prejudice of other claimants. The answer to Enterprise's concern is simple.

We hold that Webster must be allowed to maintain his civil damages action if he notifies the court supervising the insolvency that he unequivocally elects to recover payment of any judgment against Enterprise only from its insurers and that he shall not under any circumstances seek to recover from Enterprise's assets. Any other claimant wishing to maintain an action for damages must elect likewise. Such elections will negate the possibility of judgments that might affect Enterprise's assets, even if the total

amount of all judgments exceeds the limit of Enterprise's insurance coverage.[9]

We emphasize that Webster and the other personal injury plaintiffs must make a binding election before being allowed to proceed with their pending civil actions. Each plaintiff must choose either: (1) to participate in the statutory claims proceeding under the Insurance Code, or (2) to seek recovery in an ordinary civil damages action. ▆▆ ▆▆ ▆ 10.) A plaintiff cannot seek to recover in one forum and then, if displeased with the result, seek to recover in the other forum.[10]

## 2. There is no unfairness to other claimants.

▆▆ Enterprise contends Webster is seeking to obtain an unfair preference over Enterprise's creditors whose claims are not covered by insurance. We are unable to find any logical premise for this argument. There is no inherent unfairness in the fact that some claims against Enterprise are covered by insurance and others are not. The only unfairness would lie in the result sought by Enterprise—arbitrarily denying Webster and the other similarly situated victims recovery from Enterprise's insurance proceeds merely so that all of Enterprise's creditors, tort or otherwise, would be equally disadvantaged by its insolvency. Such result would require a peculiar sense of egalitarianism. We also note that many, perhaps most, of Enterprise's other creditors, including policyholders and other businesses, entered into voluntary relationships with Enterprise. Webster did not ask to be shot in the back.

We also find no factual support for Enterprise's claim of unfairness. Because Webster will recover, if at all, only from Enterprise's insurance rather than from its assets, recovery by creditors whose claims are not covered by Enterprise's insurance and thus will be paid from Enterprise's assets will not be diminished. Indeed, to the extent that other creditors seek to recover from those assets, their prospects for total recovery will be

[9] We need not and do not decide the issue of how the insurance proceeds should be distributed among the successful plaintiffs if the total amount of judgments does exceed the coverage. If the issue arises, a trial court can decide it at an appropriate time.

[10] Enterprise and Webster disagree as to the meaning of Webster's offer when he sought relief from the stay not to seek recovery from Enterprise's assets without prior court approval. We need not resolve that dispute. The trial court apparently believed the Insurance Code mandated a stay of Webster's action and that no election could be adequate. On remand, the trial court need determine only whether any election hereafter made is in accord with the requirements we have set forth in this opinion. We also note that, although the parties have referred to Webster's offer as a proposed "stipulation," we use the term "election." A stipulation is an agreement. (Black's Law Dictionary (5th ed. 1979) p. 1269.) There is, however, no requirement that the commissioner or Enterprise agree to Webster's election not to pursue Enterprise's assets.

increased if Webster's claim is paid out of Enterprise's insurance rather than its assets. Webster will obtain no unfair advantage.

Enterprise also ignores that the vast majority of claims against an insolvent insurer are made pursuant to insurance policies it has issued. Those claims are payable by the California Insurance Guarantee Association (CIGA), which provides insurance "arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies." (§§ 119.5, 1063 et seq.; *Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 784 [244 Cal.Rptr. 655, 750 P.2d 297].) The commissioner admits those claims are already being paid. This payment establishes that the CIGA claims have not been and will not be affected by Webster's possible recovery.

We find no unfairness in allowing Webster and the other similarly situated tort victims from being allowed to maintain their actions to obtain payment from Enterprise's insurers.

*3. Webster's action will not disrupt the liquidation proceeding.*

The commissioner contends the prosecution of Webster's action will disrupt Enterprise's orderly liquidation. This contention is also not supported by fact or logic. Apparently, the commissioner means she cannot distribute Enterprise's assets until she knows whether Webster is entitled to a share of them and, if so, how much. This argument fails entirely in light of the requirement we have imposed on Webster that he forego any recovery from Enterprise's assets as the price of being allowed to maintain his civil action. Nor will the assets be depleted by the costs incurred in defending Webster's action. The commissioner admits Enterprise's defense is being provided and paid for by Enterprise's liability insurers.[11] Webster's action will not delay or disrupt the liquidation by interfering with Enterprise's assets.

The commissioner, however, contends Webster's action and the others arising from the shootings will require the commissioner's substantial time and effort to defend and will thus disrupt the liquidation. This argument ignores that private counsel paid by Enterprise's insurers are responsible for its legal representation. The commissioner's role, if any, will be secondary. Recognizing this fact, the commissioner surmises that she may be asked to provide guidance to the insurance defense counsel and to comply with

---

[11] If that were not the case, the compensation of Enterprise's private counsel would be in violation of section 1036, which provides that, if compensation of counsel is from the insolvent's assets, the payment must be approved by the insolvency court. There is no reference in the record before us to any such approval. We inquired of the commissioner before oral argument as to the payment of Enterprise's counsel. The commissioner assured us by letter that counsel were being paid only by Enterprise's insurers, "thereby preserving the assets of the liquidation estate."

discovery demands. Aside from being speculative, this argument is contrary to the facts of this case and to the realities of litigation. Webster's action is to recover for personal injuries and is peripheral to the liquidation. The counsel hired by Enterprise's insurers are presumably competent in personal injury law and will not require legal advice from the commissioner, who is an expert in insurance matters but not in defending personal injury lawsuits.

We also reject the notion that the commissioner will be much involved with discovery or other pretrial procedures. Webster's action is based entirely on events that occurred before the insolvency proceeding began. Thus, witnesses who may be called to testify will not be employees of the commissioner. The facts of this case also suggest it is not one requiring substantial document discovery as would an antitrust or business litigation case. There is no evidence to suggest that Enterprise's private counsel cannot adequately represent it in the actions by Webster and the other shooting victims.

We believe the commissioner's involvement in Webster's action will be minimal at most. Indeed, allowing Webster to maintain his independent action will likely benefit the commissioner. Surely she does not mean to suggest that she would treat the claim of a grievously wounded victim in a cursory fashion. If Webster were forced to submit to the statutory claims procedure, the commissioner would have to conduct a thorough investigation of the claim to determine whether to pay it and, if so, how much, especially if Webster's claim is as complex as the commissioner contends. This would require a substantial involvement by her staff. The insolvency statutes also suggest the burden on the commissioner would be substantial. As enacted in 1935, section 1058 provided: "In any proceeding pending under the provisions of this article, the court in which such proceeding is pending shall have jurisdiction *to summarily hear and determine,* in such proceeding, all actions or proceedings then pending or thereafter instituted by or against [the insolvent insurer] . . . ." (Stats. 1935, ch. 291, p. 1008, italics added.) In 1939, the Legislature amended section 1058 by deleting the word "summarily" from the phrase "to summarily hear and determine." Although we need not decide in this case the effect of the amendment, it suggests that a full and fair determination of a claim is required. If Webster's independent action proceeds with private counsel doing the work, the commissioner conserves her valuable resources for the liquidation.

*4. Webster should not be unnecessarily deprived of a jury trial.*

The parties disagree at length as to whether Webster has a right to a jury trial in the liquidation proceeding. In light of our holding that, assuming a proper election, he must be allowed to maintain an action outside that proceeding, we need not resolve the dispute on this issue. We do recognize,

however, that before Enterprise's insolvency proceeding began, Webster had a right to a jury trial of his civil action for damages. (Cal. Const., art. I, § 16; Code Civ. Proc., § 592.)[12] We agree with the high court's observation in *Foust* v. *Munson S. S. Lines, supra,* 299 U.S. 77, 84 [81 L.Ed. 49, 54], decided on very similar facts, that "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Scrutiny of the facts before us shows there is no basis whatsoever on which to deny Webster a jury trial.

## DISPOSITION

The judgment of the Court of Appeal is reversed with directions to issue a writ of mandate to the superior court ordering it to vacate the stay of petitioners' action if they elect in accordance with this opinion not to seek recovery from Enterprise's assets.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Arguelles, J., and Kaufman, J., concurred.

---

[12]Article I, section 16 of the California Constitution states: "Trial by jury is an inviolate right and shall be secured to all . . . ." Code of Civil Procedure section 592 states: "In actions . . . for injuries, an issue of fact must be tried by a jury, unless a jury trial is waived, or a reference is ordered, as provided in this Code."