[No. F056765. Fifth Dist. Oct. 26, 2009.]

In re J.B. et al., Persons Coming Under the Juvenile Court Law.
STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff
and Respondent, v.
R.S.C., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the Introduction, part III.B. of the Discussion, and the Disposition are certified for publication.

## Counsel

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, and Carrie M. Stephens, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

KANE, J.—

## INTRODUCTION

Appellant R.S.C. (Mother) appeals from the jurisdictional findings and dispositional orders of the juvenile court regarding her two children, 16-year-old J.B. (J.) and 12-year-old L.K. (L.). Mother contends there was insufficient evidence to support the jurisdictional findings and the orders removing the children from her custody. We will affirm.

In the published portion of this opinion, we hold that a finding under Welfare and Institutions Code section 361, subdivision (c)(6),[1] which must be supported by expert testimony—that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child—is *not* required when an Indian child is removed from the custody of one parent and placed with the other parent.

## PROCEDURAL AND FACTUAL SUMMARY*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

I.–III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    A. *Sufficiency of the Evidence**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise noted.

*See footnote, *ante*, page 751. The facts of the case are irrelevant to the legal issue addressed in the published portion of this opinion and we omit them for brevity.

## B. *Indian Child Welfare Act Finding*

Mother contends that before the juvenile court could remove her daughter L., an Indian child, from her custody and place her in father's (Father) custody, the court was required to make a finding, supported by expert testimony, that continued custody of L. by Mother was likely to result in serious emotional or physical damage to L. We disagree.

According to section 361, subdivision (c)(1), before the juvenile court can remove a child from a parent's physical custody, it must find by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." This finding must be made to remove a dependent child "from the physical custody of his or her parents or guardian or guardians *with whom the child resides at the time the petition was initiated.*" (§ 361, subd. (c), italics added.) In other words, this finding is required even when the child is removed from one parent and placed with the other, noncustodial parent. (See *In re Katrina C.* (1988) 201 Cal.App.3d 540, 548–549 [247 Cal.Rptr. 784].)

A second finding is required in "an Indian child custody proceeding"—section 361, subdivision (c)(6), requires that the juvenile court must also find by clear and convincing evidence that "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child . . . ." Furthermore, "that finding [must be] supported by testimony of a 'qualified expert witness' as described in Section 224.6." (*Ibid.*) Mother asserts that the plain language of this provision requires that the juvenile court make this finding even when an Indian child is placed with a noncustodial *parent* rather than in foster care, and thus the juvenile court in this case was required to make this finding, supported by expert testimony, before it could remove L. from Mother's custody. We disagree.

"In construing a statute, our task is to determine the Legislature's intent and purpose for the enactment. [Citation.] We look first to the plain meaning of the statutory language, giving the words their usual and ordinary meaning. [Citation.]" (*People v. Garcia* (2002) 28 Cal.4th 1166, 1172 [124

Cal.Rptr.2d 464, 52 P.3d 648].) Our first and most important responsibility in interpreting statutes is to consider the words employed; in the absence of ambiguity or conflict, the words employed by the Legislature control, and there is no need to search for indicia of legislative intent. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) "[W]e presume the Legislature meant what it said. [Citation.] 'However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.' [Citations.]" (*People v. Garcia, supra*, at p. 1172.) "To resolve [an] ambiguity, we rely upon well-settled rules. 'The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. . . . An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].' [Citations.]" (*People v. Shabazz* (2006) 38 Cal.4th 55, 67–68 [40 Cal.Rptr.3d 750, 130 P.3d 519]; see also *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 903 [135 Cal.Rptr.2d 30, 69 P.3d 951] [statutory language should not be interpreted in isolation, but must be construed in the context of the entire statute of which it is a part, in order to achieve harmony among the parts].) We must interpret a statute in accord with its legislative intent and where the Legislature expressly declares its intent, we must accept that declaration. (*Tyrone v. Kelley* (1973) 9 Cal.3d 1, 10–11 [106 Cal.Rptr. 761, 507 P.2d 65].) Absurd or unjust results will never be ascribed to the Legislature, and a literal construction of a statute will not be followed if it is opposed to its legislative intent. (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596]; *Lungren v. Deukmejian, supra*, 45 Cal.3d at p. 735.)

Thus, we begin by examining the plain language of section 361, the relevant portion of which was enacted to incorporate the requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) into California's statutes:

"(c) A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the

time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5), inclusive, *and, in an Indian child custody proceeding, paragraph (6)*:

"(1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody. . . [¶] . . . [¶]

"(6) *In an Indian child custody proceeding*, continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child, and that finding is supported by testimony of a 'qualified expert witness' as described in Section 224.6." (§ 361, subd. (c)(1), (6), italics added.)

■ An "Indian child custody proceeding" in turn is defined by section 224.1, subdivision (c), as "a 'child custody proceeding' within the meaning of Section 1903 of [ICWA], including a proceeding for temporary or long-term foster care or guardianship placement, termination of parental rights, preadoptive placement after termination of parental rights, or adoptive placement." This list does not include a proceeding in which a dependent child is removed from one parent and placed with the other. Similarly, the ICWA definition referenced in section 224.1 (25 U.S.C. § 1903) does not refer to placement with a noncustodial parent.[3] By expressly including certain placements, the Legislature impliedly excluded others, such as placement with a parent. (See *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 389 [97

---

[3] Title 25 United States Code section 1903 provides: "(1) 'child custody proceeding' shall mean and include—[¶] (i) 'foster care placement' which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated; [¶] (ii) 'termination of parental rights' which shall mean any action resulting in the termination of the parent-child relationship; [¶] (iii) 'preadoptive placement' which shall mean the temporary placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement; and [¶] (iv) 'adoptive placement' which shall mean the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption. [¶] Such term or terms shall not include a placement based upon an act which, if committed by an adult, would be deemed a crime or upon an award, in a divorce proceeding, of custody to one of the parents." (See also 25 C.F.R. § 23.2 (2009), reiterating this provision.)

Cal.Rptr.3d 464, 212 P.3d 736] [citing the rule of statutory construction, *expressio unius est exclusio alterius*—to express or include one thing implies the exclusion of the other].) If the Legislature intended to include placement with a parent, we assume it would have expressly done so by adding it to the list.

■ Furthermore, the plain language of the statute cannot be said to include placement with a parent as a type of foster care placement. Placement with a parent is *not* foster care. (See 25 U.S.C. § 1903(1)(i); see also, e.g., *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 262–265 [5 Cal.Rptr.3d 261] [discussing different considerations for juvenile court and different schemes when child is placed with noncustodial parent rather than in foster care].) Section 1903 defines "foster care placement" as "any action *removing an Indian child from its parent* or Indian custodian *for temporary placement in a foster home* or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated . . . ." (25 U.S.C. § 1903(1)(i), italics added.)

■ Thus, the plain language of section 361, subdivision (c)(6), establishes that the statute applies only in an "Indian child custody proceeding," the definition of which expressly includes various proceedings, but *not* a proceeding for placement with a *parent*. (§ 224.1, subd. (c); 25 U.S.C. § 1903.) Accordingly, the finding under that provision and the expert testimony to support it are not required when an Indian child is placed with a parent.

Although we believe the statutory language is unambiguous, we note for good measure that this reading comports with the remainder of the ICWA statutory scheme and the express purpose of ICWA. We briefly note some examples supporting the conclusion that ICWA does not apply to a proceeding to place an Indian child with a *parent*.

First, 25 United States Code section 1912(e)—the federal counterpart to section 361, subdivision (c)(6)—addresses only foster care in this context: "No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (25 U.S.C. § 1912(e).)

Likewise, the California rule of court that implements section 361, subdivision (c)(6), also notes the foster care context, providing that "[i]n any child custody proceeding listed in rule 5.480, the court may not order placement of an Indian child unless it finds by clear and convincing evidence that continued custody with the parent or Indian custodian is likely to cause the Indian child serious emotional or physical damage and it considers evidence regarding prevailing social and cultural standards of the child's tribe, including that tribe's family organization and child-rearing practices. [¶] (1) Testimony by a 'qualified expert witness,' as defined in . . . section 224.6 . . . is required before a court orders a child placed *in foster care* or terminates parental rights." (Cal. Rules of Court, rule 5.484(a), italics added.)[4]

The notice provision of ICWA also reflects the same purpose, coming into play when the agency seeks foster care placement and the juvenile court has reason to believe the child is an Indian child. (25 U.S.C. § 1912(a) ["In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, *the party seeking the foster care placement of . . . an Indian child* shall notify the parent or Indian custodian and the Indian child's tribe . . . ."]; 25 C.F.R. § 23.11(a) (2009); see, e.g., *In re Alexis H.* (2005) 132 Cal.App.4th 11, 15 [33 Cal.Rptr.3d 242] [because agency sought neither foster care nor adoption, ICWA seemingly did not apply]; *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 699–701 [127 Cal.Rptr.2d 54] [although child ultimately placed with father, ICWA applied where child was initially in foster care and agency sought continued foster care placement]; see also *In Interest of J.R.H.* (Iowa 1984) 358 N.W.2d 311, 321–322.)

Finally, the legislative intent behind ICWA expressly focuses on the removal of Indian children from their *homes and parents*, and placement in *foster or adoptive homes*. In establishing ICWA, Congress found "that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and

---

[4] California Rules of Court, rule 5.480 states that the rules "addressing [ICWA] as codified in various sections of the California Family, Probate, and Welfare and Institutions Codes, appl[y] to all proceedings involving Indian children *that may result in an involuntary foster care placement*; guardianship or conservatorship placement; custody placement under Family Code section 3041; declaration freeing a child from the custody and control of one or both parents; termination of parental rights; or adoptive placement, including: [¶] (1) Proceedings under Welfare and Institutions Code section 300 et seq., and sections 601 and 602 et seq. *in which the child is at risk of entering foster care or is in foster care*, including detention hearings, jurisdiction hearings, disposition hearings, review hearings, hearings under section 366.26, and subsequent hearings affecting the status of the Indian child . . . ."

private agencies and that an alarmingly high percentage of such children are placed in *non-Indian foster and adoptive homes and institutions . . . .*" (25 U.S.C. § 1901(4), italics added.) Thus, Congress declared its policy "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children *from their families* and the placement of such children *in foster or adoptive homes* which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." (25 U.S.C. § 1902, italics added; see 25 C.F.R. § 23.3 (2009).) Following suit, the California Legislature declared that "[t]he state is committed to protecting the essential tribal relations and best interest of an Indian child by promoting practices, in accordance with [ICWA] (25 U.S.C. Sec. 1901 et seq.) and other applicable law, designed to prevent the child's involuntary *out-of-home placement* and, whenever that placement is necessary or ordered, by placing the child, whenever possible, in a placement that reflects the unique values of the child's tribal culture and is best able to assist the child in establishing, developing, and maintaining a political, cultural, and social relationship with the child's tribe and tribal community." (§ 224, subd. (a)(1), italics added.)

In sum, the plain language of section 361, subdivision (c)(6), demonstrates that it does not apply to placement of an Indian child with a *parent*, and this conclusion comports with the Legislature's intent and the purpose of ICWA. Thus, a finding under section 361, subdivision (c)(6), and the expert testimony to support it were not required to remove L. from Mother and place her in Father's custody. If the Agency seeks foster care placement of L. in the future, the requirements under ICWA will again become an issue.[5]

C.–D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[5] Accordingly, the Cherokee Nation responded to the placement of L. with Father, as follows:

"The child, [L.], is currently placed back in the home of [Father]. The Cherokee Nation has staffed the case detailed in the above stated action and have determined to **not** intervene at this time due to the child's in home placement. If the child is removed from the home and the department seeks foster care placement or termination of parental rights, the Cherokee Nation requests to be notified in accordance with 25 U.S.C. § 1901 et seq."

*See footnote, *ante,* page 751.

## DISPOSITION

The juvenile court's findings and orders are affirmed.

Vartabedian, Acting P. J., and Levy, J., concurred.