[No. B045630. Second Dist., Div. Five. July 31, 1991.]

MARGARET HAWORTH et al., Plaintiffs and Appellants, v. BENJAMIN LIRA et al., Defendants and Respondents.

## Counsel

Hogan, Baynes & Haworth, Greason Haworth and Maral Injeyan for Plaintiffs and Appellants.

Cassidy, Warner, Brown, Combs & Thurber and David K. Thurber for Defendants and Respondents.

## Opinion

**TURNER, P. J.—**

### I. Introduction

Plaintiffs appeal from two postverdict orders which denied them attorney fees pursuant to Code of Civil Procedure section 1021.9 and double damages for injury to their horse as permitted by Food and Agricultural Code section 31501. Because we conclude that the trial court should have exercised its discretion and decided whether to award attorney fees and, if so, in what

amount, as well as doubled the $1,500 award for injury to the horse, we reverse and remand this case to superior court so that the judgment may be modified to conform with the views expressed in this opinion.

## II. Procedural Aspects

The complaint alleged that plaintiffs Margaret and Donna Haworth resided in an "equestrian zone" and were neighbors of defendants, Benjamin, Roberta, and Gabriel Lira. Plaintiffs alleged that over a substantial time period, defendants negligently failed to control and confine two pit bulldogs which repeatedly harassed plaintiffs and plaintiffs' animals, causing emotional distress to plaintiffs. On one occasion one of defendants' dogs came onto plaintiffs' property and severely injured plaintiffs' horse, Piper. On another occasion one of defendants' dogs came onto plaintiffs' property and bit plaintiff Margaret Haworth's hand.

By special verdict, the jury awarded plaintiffs personal injury damages for Margaret Haworth, $6,000; personal injury damages for Donna Haworth, $4,000; property damages $2,100, of which $1,500 was for the reduction in value of the horse Piper which was bitten by one of defendant's two pit bulldogs.

Following the return of the verdict, in their memorandum of costs, plaintiffs also claimed attorneys' fees of $36,563.27 pursuant to Code of Civil Procedure section 1021.9. Plaintiffs moved that the $1,500 award for Piper's injuries be doubled pursuant to Food and Agricultural Code section 31501. The trial court held that neither statute applies to this case. The court denied the motion to double the award for Piper and granted defendants' motion to tax costs by striking plaintiffs' claim for attorneys' fees.

We reverse the two postverdict orders in part. Plaintiffs are entitled to have the court exercise discretion concerning attorneys' fees pursuant to Code of Civil Procedure section 1021.9. Additionally, plaintiffs are entitled to double damages under Food and Agricultural Code section 31501 as owners of livestock injured by a dog.

## III. Plaintiffs Are Entitled to an Award of Attorney Fees

### A. Introduction

Code of Civil Procedure section 1021.9 provides in relevant part: "In any action to recover damages to personal . . . property resulting from trespassing on lands either . . . intended or used for the raising of livestock, the

prevailing plaintiff shall be entitled to reasonable attorney's fees in addition to other costs, and in addition to any liability for damages imposed by law." The trial court held as a matter of law that the foregoing statute applied only when the plaintiff was a commercial rancher or farmer. In so concluding, the trial court relied upon various legislative intent materials which will be discussed later. Furthermore, the trial court determined that plaintiffs were not commercial ranchers, and, hence, were not entitled to an attorney fee award.

### B. *The Uncontradicted Evidence Concerning the "Raising of Livestock" (Code Civ. Proc., § 1021.9) on Plaintiffs' Lands*

The uncontroverted evidence indicated that plaintiffs moved onto the property at 2316 Kaydle Road in Whittier, California in August 1985. The property was in an area zoned as an "equestrian district" pursuant to Los Angeles County Code title 22, Planning and Zoning, section 22.44.150. This ordinance permitted the "keeping of horses and other large domestic animals for personal use as accessory to residential use . . . ." (*Ibid.*) The ordinance provided that the county planning commission could approve conditions to "insure that animals . . . kept or maintained" in accord with the purposes of the ordinances and permitted the planning commission to regulate the "number and location of animals" and the "construction of corrals, stables or other structures used for housing such animals." (L. A. County Code., tit. 22, § 22.44.180.) Furthermore, section 22.44.185 of title 22 required that all "animals authorized to be kept in an equestrian district shall be maintained in a safe and healthy manner . . . ." At the time of the purchase of the property by plaintiffs, there were five wooden stalls to the rear of the house and several metal sheds. Upon moving on the property, these sheds were removed and, at the time of the injury to Piper, the property consisted of a residence, two horse corrals, a hay barn, and an arena where horses could exercise.

Plaintiffs were experienced in horse husbandry and handling and members of well known horse associations. Plaintiff Donna Haworth had taken four semesters of college training in horse husbandry. Plaintiffs participated in horse shows and were members of the Los Angeles County Parks and Recreation Horse Patrol.

Plaintiffs purchased a mare in foal who gave birth on May 5, 1986, to a foal which they named Piper. Plaintiff Donna Haworth testified without contradiction that Piper was "raised" on the property. At the time of trial, Piper was three years old and had constantly been kept on plaintiffs' property. Also, at the time of trial, plaintiffs kept four horses on the property. When plaintiffs purchased Piper's dam, they intended to sell the colt after

birth. Piper was bred to be a thoroughbred jumper, which was not the type of horse which plaintiffs would ordinarily keep for riding purposes. Additionally, plaintiffs raised goats, geese, ducks, chickens, and dogs on the property. On October 19, 1985, one of plaintiffs' goats gave birth to three kids, one of which died shortly after birth. At the time of trial, a new goat was being used for breeding purposes on the property.

### C. *Standard of Review*

■ Interpretation of a statute and its application to a given situation are matters of law to be determined by the court. (*Neal v. State of California* (1960) 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839]; *Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630].) Because the interpretation and application of a statute are questions of law, an appellate court is not bound by the trial judge's interpretation. (*California Ins. Guarantee Assn.* v. *Liemsakul* (1987) 193 Cal.App.3d 433, 438 [238 Cal.Rptr. 346].) Furthermore, as the Supreme Court has noted: "The interpretation of a statute, however, is a question of law, and we are not bound by evidence presented on the question in the trial court. [Citations.] The propriety of the use of extrinsic materials in determining legislative intent is a question which may properly be considered on appeal regardless of whether the issue was raised in the trial court." (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].)

### D. *Because Code of Civil Procedure Section 1021.9 Is Unambiguous, No Statutory Construction or Reference to Legislative Intent Materials Is Appropriate*

■ Our Supreme Court has repeatedly emphasized that when the words of a statute are unambiguous there is no need to refer to extrinsic aids such as legislative history. In *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 800 [268 Cal.Rptr. 753, 789 P.2d 934], our Supreme Court held: "The reporters rely on the legislative history of [Evidence Code] section 1070 to support their view. Delaney and the prosecutor disagree with the reporters' interpretation of that history. It is, however, beside the point for two reasons. First, as we have explained, article I, section 2(b) [of the California Constitution] and [Evidence Code] section 1070 are virtually identical. In light of our determination that the language of article I, section 2(b) is unambiguous, simple logic compels the same conclusion as to the statute. Thus, we need not go beyond the words of the statute to extrinsic aids such as legislative history. [Citation.] To do so would violate the principle that, '[w]hen statutory language is thus clear and unambiguous there is no need for construction, and *courts should not indulge in it*.' [Citation.] This rule is

deeply rooted in our jurisprudence. [Citation.]" (Original italics, footnote omitted.)[1]

■ In the present case, the language in Code of Civil Procedure section 1021.9 is clear and unambiguous. It plainly states that if property is "used for the raising of livestock" then there is a right to attorney fees in the case of damage to personal property resulting from trespassing on such lands. Because the lands in the present case were used for raising livestock including horses and goats as well as Piper, the horse that was injured in the present case, those plainly stated words in Code of Civil Procedure section 1021.9 should be given effect without resort to unnecessary review of legislative intent materials or otherwise attempt to construe the plain meaning of the statute.

### E.   Even If Legislative History Materials Are Utilized, They Never State That the Legislation Was Intended to Solely Refer "to Ranches or Farms in the Agricultural Industry" as Defendants Argue

The legislative history materials available to this court, insofar as they are admissible, do not ever state that the Legislature intended to limit the provisions of Code of Civil Procedure section 1021.9 to actions brought by ranchers or farmers "in the agricultural industry." Some of the legislative history materials available to this court are entirely inadmissible while others are either not particularly probative or are solely consistent with the conclusion that Code of Civil Procedure section 1021.9 was intended to allow persons such as plaintiffs to recover attorney fees. First, certain of the legislative history materials are inadmissible on the question of the Legislature's intent in enacting the statute. For example, one of the documents is a letter from a member of Senator Barry Keene's staff to a lawyer in Sausalito, California, who did not even represent any of the parties in the present

---

[1] In *Delaney*, our Supreme Court held that the language of Evidence Code section 1070 was so unambiguous that there was no need to engage in any statutory construction or review any legislative history materials. Evidence Code section 1070, subdivision (a) provided that a journalist could not be held in contempt for refusing "to disclose, in any proceedings defined in Section 901, the source of any information procured while so connected or employed for publication in a newspaper, magazine or other periodical publication, or for refusing to disclose any unpublished information obtained or prepared in gathering, receiving, or processing of information for communication to the public." Certainly, words such as "source of any information" or "any unpublished information obtained or prepared in gathering, receiving or processing of information or communication to the public" could be arguably regarded as sufficiently ambiguous to permit resort to legislative history materials. However, our Supreme Court found that such language was not so vague. The language in Code of Civil Procedure section 1021.9 is certainly just as unambiguous as the foregoing language appearing in Evidence Code section 1070. If it was inappropriate for the Supreme Court in *Delaney* to indulge in legislative construction, then it is likewise inappropriate for defendants to present such an argument to this court.

lawsuit. The letter states: "Enclosed are copies of documents retrieved from the file for Senate Bill 2513, Chapter 1381, Statutes of 1986, which show this legislation was intended to apply to trespass lawsuits in rural areas. The term 'lands either under cultivation or intended or used for the raising of livestock,' was used to designate ranch and farmlands. [¶] I am the staff person assigned to work on this legislation for Senator Keene and know his intention was to aid California's ranchers and farmers. This information has been confirmed by John Tooker, California Cattlemen's Association, sponsors of SB 2513." Such a statement of legislative intent by a legislator would be inadmissible on the question of a statute's purpose. (*California Teachers Assn.* v. *San Diego Community College Dist.*, *supra*, 28 Cal.3d at pp. 700-701.) ■ Unless a legislator's letter concerning legislative intent alludes to " 'argument that [she or] he had presented in securing the passage of the amendment' " of the legislation or reiterates "the discussion and events which transpired in the Legislature," a statement by an assemblyperson or senator is inadmissible on the question of legislative intent. (*Id.*, at p. 701.) A postenactment statement by a person who was not even a member of the Legislature, such as Senator Keene's staff member, apart from its inadmissibility, is entitled to virtually no weight. (*Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 887 [153 Cal.Rptr. 842, 592 P.2d 329]; *Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1136, fn. 11 [203 Cal.Rptr. 886].) The letter from Senator Keene's staff member, aside from the fact that it was inadmissible, only reflected his intent and that of the California Cattlemen's Association, not that of any other senator, single member of the state assembly, or Governor Deukmejian, who signed the legislation. The letter was inadmissible and entitled to no weight.

■ Second, other committee reports prepared for both the Assembly and Senate do not reveal that the legislation which ultimately became Code of Civil Procedure section 1021.9 was intended to apply only to commercial ranchers or farmers. Although the agricultural lobbying institutions which induced members of the Legislature to sponsor or support the legislation represented commercial ranching interests, none of the committee reports are indicative of a legislative intent to exclude the benefits of Code of Civil Procedure section 1021.9 to persons such as plaintiffs.

Third, when the bill was finally approved, the Legislative Counsel's Digest stated: "Existing law, with specified exceptions, prohibits the award of attorney's fees as part of a judgment on behalf of a successful plaintiff. [¶] This bill would authorize the recovery of attorney's fees in any action to recover damages to personal or real property resulting from trespass on lands either under cultivation or intended or used for the raising of livestock." The Legislative Counsel's Digest, which is indicative of legislative intent, makes

no reference to an exception for lands which are used for raising livestock which are not owned by a rancher or a person in the agricultural industry.

Fourth, in the trial court, defendant submitted a letter from the executive vice-president of the California Cattlemen's Association to Governor Deukmejian which urged him to sign the bill. Such letters are inadmissible. (*California Teachers Assn. v. San Diego Community College Dist., supra*, 28 Cal.3d at p. 701; *Honey Springs Homeowners Assn. v. Board of Supervisors, supra*, 157 Cal.App.3d at p. 1136, fn. 11.; *People v. Stepney* (1981) 120 Cal.App.3d 1016, 1020, fn. 4 [175 Cal.Rptr. 102].) Even if the letter was admissible, it supports plaintiff's position concerning their right to attorney's fees. After discussing the fact that ranchers suffer losses due to trespass, the executive vice-president of the association wrote to Governor Deukmejian: "SB 2513 will authorize the recovery of attorney's fees in any action to recover damages to personal or real property resulting from trespass on lands either under cultivation or intended or used for the raising of livestock." (Letter from John W. Ross to Governor George Deukmejian (Sept. 1, 1986) p. 1.) The view of the California Cattlemen's Association was clearly that the bill would apply in "any action" to recover damages for personal property from trespass "on lands . . . used for the raising of livestock." The undisputed facts in the present case indicate that plaintiff's were such persons and suffered such damage. When all of the legislative materials are reviewed and placed in their proper context, not a single word in any of those documents supports the contention that the Legislature intended that Code of Civil Procedure section 1021.9 be solely available to persons in the ranching and agricultural industry.

### F.  *Other Considerations*

Even if it was appropriate to refer to legislative intent materials, when other relevant factors are considered, defendants' argument concerning the scope of the attorney fee right embodied in Code of Civil Procedure section 1021.9 is without merit. ■   When engaging in an effort to ascertain the intent of the Legislature, a court "first looks to the language of the statute, attempting to give effect to the usual, ordinary import of that language and seeking to avoid making any language mere surplusage. Significance if possible should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." (*Honey Springs Homeowners Assn. v. Board of Supervisors, supra*, 157 Cal.App.3d at p. 1136, fn. 11.) ■   The language of the statute never creates the exception defendants urge. The statute refers to "any action to recover damages" it does not refer to an action brought by a person in the agricultural industry. The right to attorney fees exists when there is trespassing on lands "used for the

raising of livestock." The statute does not indicate that the attorney fee right only inures to persons who are engaged in the commercial livestock industry. Those words appear nowhere. Accordingly, given the first obligation of the court to look to the language of the statute, traditional principles of statutory construction would mandate the conclusion that defendants are incorrect in their efforts.

Additionally, a court should look to the "evils to be remedied." (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260].) No doubt, the Legislature was concerned about losses sustained by ranchers. However, the language utilized by the Legislature was not limited to ranchers or other commercial farmers. The language was much broader. Moreover, when the legislation passed the Senate, it provided specific provisions relating to those who damage fences. The concern of the agricultural industry related to those persons who damaged fences. When the bill was returned to the Senate for concurrence after the Assembly deleted all of the matters which were the basis of concern by the agricultural lobby, it was a broadly worded piece of legislation which went beyond serving the interests of commercial farmers. When all of these factors are considered, the Legislature's choice of words when coupled with the Legislative Counsel's Digest as well as the contents of the committee reports, render inescapable the conclusion that the language in Code of Civil Procedure section 1021.9 does not exclude plaintiffs.

### G. *Conclusion*

During its discussion concerning the attorney fee issue, the trial court expressed concern about the amount of fees claimed by plaintiffs. The trial court never reached the issue of whether the amount of fees were excessive because it determined that Code of Civil Procedure section 1021.9 could only apply to a commercial rancher or farmer. In fixing the amount of attorney fees, the trial court may take into account a whole series of considerations in the exercise of its discretion. (*Niederer* v. *Ferreira* (1987) 189 Cal.App.3d 1485, 1507 [234 Cal.Rptr. 779].) Furthermore, a superior court judge retains the discretion to deny prevailing parties such as plaintiffs an award of costs when the verdict is below the jurisdictional maximum of the municipal court. (Code Civ. Proc., § 1033, subd. (a).) In the present case, the trial court explicitly refused to grant plaintiffs' request to claim their legal fees as an item of cost because it believed that Code of Civil Procedure section 1021.9 only applied to commercial ranchers or farmers. The trial court had no occasion to exercise its discretion to deny plaintiffs their legal fees pursuant to Code of Civil Procedure section 1033, subdivision (a). On remand, the trial court may exercise its discretion to deny prejudgment fees

as well as fees on appeal altogether or to determine the amount of reasonable fees.

## IV. PLAINTIFFS ARE ENTITLED TO DOUBLE DAMAGES FOR INJURIES TO PIPER

■ Plaintiffs contend they were entitled to double damages (as to the $1,500 award for damage to Piper) pursuant to Food and Agricultural Code section 31501 which provides: "*The owner* of *any livestock* or poultry *which is injured* or killed *by any dog* may recover as liquidated damages from the owner of the dog twice the actual value of the animals killed or twice the value of the damages sustained by reason of the injuries, as the case may be." (Italics added.)

The trial court construed this provision of law to only apply to livestock or poultry "used in a commercial sense." However, as in the case of Code of Civil Procedure section 1021.9, we believe that the language in Food and Agricultural Code section 31501 is unambiguous and there is no *need* to engage in any judicial construction.[2] (*Delaney* v. *Superior Court, supra*, 50 Cal.3d at p. 800.) Nonetheless, even if judicial construction of the language in section 31501 were appropriate, we believe that the statute must be construed to apply to plaintiffs' given the uncontroverted facts in the present case. As noted previously, the trial court opined that the phrase, "livestock or poultry" was "used in a commercial sense." Defendants attempt to support this reasoning by pointing out that section 31501 is contained in the Food and Agricultural Code. They cite a portion of section 3 which declares "that the provisions of this code are enacted in the exercise of the power of this state for the purposes of promoting and protecting the agricultural industry of the state . . . ." The portion omitted by defendants, however, goes on to state, "and for the protection of the public health, safety, and welfare." (§ 3.) Section 31501 (Stats. 1929, ch. 852, § 5, p. 1883) is a part of division 14 of the Food and Agricultural Code relating to dogs. (§§ 30501-31508.) This comprehensive scheme includes provisions for the licensing and tagging of dogs, dog pounds, fees for impounding, and the seizing and killing of dogs. Many of these provisions apply within cities or portions of counties not necessarily agricultural. (§§ 30501, 30652, 30801, 31101-31108, 31151, 31251.) We hold plaintiffs were entitled to double damages pursuant to section 31501.

## V. DISPOSITION

The order granting defendants' motion to tax costs by striking the claim for attorneys' fees is reversed and the court on remand is to exercise its

---

[2]All further statutory references are to the Food and Agricultural Code.

discretion in compliance with the views expressed in this opinion. The order denying plaintiffs' motion to increase the damage award by $1,500 is reversed with directions to the trial court to add such amount to the judgment. Plaintiffs are to recover their costs on appeal jointly and severally from defendants.

Boren, J., concurred.

**ASHBY, J.,** Concurring and Dissenting.—I respectfully dissent. I agree with the majority that the $1,500 damage award should be doubled. However, I would affirm the order which denies plaintiffs' claim for attorney's fees.

The usual rule is that prevailing civil litigants are *not* entitled to collect their attorney's fees from the opposing party. (Code Civ. Proc., § 1021; *Olson* v. *Arnett* (1980) 113 Cal.App.3d 59, 67 [169 Cal.Rptr. 629].) Here we construe Code of Civil Procedure section 1021.9, a legislative exception to the general rule. The majority improperly expands this exception by giving the language a literal interpretation while ignoring the usual and ordinary sense of the words. In allowing attorney's fees for actions resulting from trespass on "lands either under cultivation or intended or used for the raising of livestock" the Legislature invoked language relating to land use. The usual and ordinary import of the words "lands either under cultivation or intended or used for the raising of livestock" is lands in the agricultural industry.[1]

Because the Legislature has used words relating to land use, it is appropriate to consider the local zoning ordinances regulating land use.

The parties live in an unincorporated area of Los Angeles County known as Pellissier Village near Whittier, California. The village is designated an equestrian district by chapter 22.44 of the Los Angeles County Planning and Zoning Code. (Tit. 22, L. A. County Code.) The purpose of such designation is stated in former section 22.44.120 (now tit., 22 L.A. County Code, § 22.44.150) as follows: "The equestrian district is established as a supplemental district in order to recognize particular areas where the keeping or

---

[1]The Legislature has used similar language in similar contexts. Revenue and Taxation Code section 23701a grants tax exempt status to agricultural organizations. It states, "For purposes of this section, the term 'agricultural' includes the art or science of cultivating land, harvesting crops or aquatic resources, or raising livestock." (Rev. & Tax. Code, § 23701a, subd. (a).)

In excluding uninhabited farm acreage from certain grading districts, Streets and Highways Code section 8121.5 states, "For the purpose of this section, 'farm acreage' means any land which is under cultivation or which is being used for pasture or grazing at the time of the hearing."

maintaining of horses and other large domestic animals for *the personal use of members of the family residing on the premises* has become or is intended to become an integral part of the character of the area. The application of this district permits the keeping of horses and other large domestic animals for *personal use as accessory to residential use* subject to standards and conditions which are intended to insure compatibility with surrounding areas and within the district itself while also taking the individual characteristics of the particular area under consideration." (Italics added.)

Permitted uses in such zone are stated in tit. 22, L.A. County Code, former section 22.44.150 (now tit. 22, L.A. County Code, § 22.44.165) as follows: "Property in the equestrian district may be used for any use permitted in the basic zone to which this district is added, subject to the same limitations and conditions as such basic zone, except that the provisions for such equestrian district shall supersede the regulations provided in Part 6 of Chapter 22.56 relative to the keeping and maintaining of horses and other equine, cattle, sheep and goats as pets or for the personal use of family residing on the premises."

The land in this case is residential land. The zoning law allows the "keeping" or "maintenance" of horses "for the personal use of members of the family residing on the premises," as an "accessory" to the basic residential use. This is not land used or intended for the raising of livestock in the ordinary and usual sense of that phrase.[2]

The fact that Piper was literally "raised" on this land because Piper was born and kept there is irrelevant. Literal construction should not be followed if opposed to the intention of the Legislature apparent in the statute. (*Webster* v. *Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596].) We must construe the words in their ordinary and usual sense to effectuate the purpose of the law. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].)

The trial court properly determined that the land here, in an equestrian residential zone, is not land "intended or used for the raising of livestock" within the meaning of Code of Civil Procedure section 1021.9.

---

[2]The "raising" of horses and other equine, cattle, sheep and goats "including the breeding and training of such animals" is permitted in the A-1 and A-2 agricultural zones. (Tit. 22, L.A. County Code, §§ 22.24.070B, 22.24.120B.)