Filed 1/13/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BELLE TERRE RANCH, INC.,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>KENNETH C. WILSON et al.<br><br>　　　Defendants and Appellants. | A137217<br><br>(Sonoma County<br>Super. Ct. No. SCV-246555) |

　　　This case involves a boundary dispute between a Healdsburg vineyard and the winery operators on the adjacent property.  After a bench trial, the court ruled in favor of the vineyard, quieting title in its favor and granting permanent injunctive relief against further trespass by the vintners.  The court also awarded $1 in nominal damages for past trespass, and upon that basis awarded the vineyard its attorney fees in the amount of nearly $117,000 under Code of Civil Procedure[1] section 1021.9.  We affirm the judgment insofar as it resolved the boundary dispute, enjoined future trespass, and awarded nominal damages, but we reverse the award of attorney fees.

## I.  BACKGROUND

　　　In February 2000, Kenneth C. Wilson (Wilson) and Diane Wilson purchased the Soda Rock Winery property (Soda Rock) in the Alexander Valley.  On the property was a century-old historic winery building that had fallen into disrepair.  The Wilsons planned

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exceptions of sections II. A. through II. G.

[1] Undesignated statutory references are to the Code of Civil Procedure.

to, and over the next decade did, restore the winery.  Their plan was to use the front of the old winery building as a tasting area, while the rear would be used to receive deliveries.

The rear of the winery building backs up to the vineyard belonging to Belle Terre Ranch, Inc. (Belle Terre), with a pathway or "avenue" between.  A line of ancient oak trees runs behind the winery within about two-to-four feet of the building.  There are three doors at the back of the winery, a standard entrance door and two eight-foot wide double doors designed to receive deliveries.

The front entrance of the winery is located on Highway 128.  In order to enter the winery from the back, users must turn from Highway 128 onto Soda Rock Lane and then onto the avenue.  It is not possible to access the avenue without first traveling on Soda Rock Lane.  When the Wilsons bought the Soda Rock property they did not know whether they had any right to use the avenue.

As the reconstruction of the Soda Rock winery commenced in about 2001, the Wilsons regularly used the avenue behind the winery building for deliveries and to allow access for heavy equipment involved in the reconstruction.  Belle Terre also used the avenue for maneuvering its equipment in tending to the vineyard.  Ron Dick, president of Belle Terre, testified he did not complain about the Wilsons' use of the avenue during the initial phases of the reconstruction because he was just trying to be neighborly.

Dick, who is approximately 70 years old, has lived on the Belle Terre property all his life.  His parents bought Belle Terre, a 150-acre ranch, in 1943.  The ranch has been used continuously for agriculture since that time and the avenue has always been considered part of Belle Terre.  It has never been used by anyone else.

When the Wilsons applied for permits to complete the winery renovation, Belle Terre raised concerns with the county.  On March 13, 2003, Belle Terre wrote a letter to the county about the Wilsons' plans, listing eight points of concern, including:
"5. Property lines—A survey should be done before a permit is issued.
[¶] 6. Trespassing—In the 1980's when the prior owners had a tasting room on site, there were people trespassing onto our property.  This needs to be prevented."

2

When the use permit was finally issued in February 2004, the conditions of approval included: "Access for this site for the winery use, tasting room, and special event traffic shall be by means of the existing entrance from State Highway 128 subject to an encroachment permit from CalTrans. Should the applicant choose to have access from Soda Rock Lane, an application for modification to the Use Permit shall be required." The Wilsons never applied for a modification. Another condition of the use permit was that "[a]ll winery related truck traffic and visitor vehicles must access and egress from State Highway 128." Despite these conditions, the Wilsons regularly used Soda Rock Lane to access the avenue and the back of the winery.

According to Wilson, in late 2002 or early 2003, he had a conversation with Dick in which they agreed that a survey of the boundary should be conducted. Dick purportedly told Wilson at that time that he would "be glad to accommodate [Wilson] . . . for being a good neighbor to have access to repair the building." Dick's permission to use the avenue was not intended to be perpetual, however. Dick testified he allowed the Wilsons to use the avenue "to repair the winery." There was no evidence that Dick ever gave the Wilsons permission to use the avenue after the winery reconstruction was finished.

Knowing they would need a survey to plan the reconstruction, in January 2003 the Wilsons commissioned Joe Story of Curtis and Associates to perform the survey. This survey showed the Belle Terre-Soda Rock boundary was approximately 12 to 13 feet behind the rear wall of the winery building.

In 2008, Dick complained to the Wilsons that a cement truck involved in the winery renovation was kicking up too much dust on the avenue. Dick was concerned the dust was settling on the grape vines, damaging his crops and raising the specter of spider mites. Dick said he had not previously objected to the Wilsons using Belle Terre's avenue while repairing their winery because he was "trying to be a good neighbor." Wilson replied that the property line was about nine feet out from the winery, saying he had had it surveyed. Dick said the boundary was the line of oak trees growing next to the back of the winery.

3

After this confrontation, Belle Terre hired a different surveyor, Howard Brunner, to survey the boundary. Dick told Brunner before the survey that he believed the line of oak trees marked the property line. Brunner concluded the property line was approximately 9.4 feet closer to the back of the Wilsons' winery than the 2003 Story survey had shown, and it closely corresponded to the line of oak trees.

Dick had an attorney write a letter to the Wilsons in August 2008, telling them to stop trespassing on Belle Terre's property. When the Wilsons continued to use the avenue, Belle Terre filed suit to quiet title to the disputed strip of land and for trespass. In addition to quieting title, Belle Terre sought a permanent injunction barring the Wilsons from trespassing, as well as attorney fees and costs. The complaint did not request damages.

The Wilsons answered the complaint by claiming they owned the nine-foot strip of land, and denying they were claiming any interest in Belle Terre's property. At trial, however, the Wilsons claimed, in the alternative, a prescriptive easement over the disputed strip of land.

The trial became a battle of the surveyors. Both surveyors agreed the property description in the Wilsons' deed traced back to the Wentworth deed from 1870, when the "public highway" referenced in the deed was a narrow, single lane, straight dirt road used by horses and wagons. The point of controversy was how best to locate the centerline of that road (which was a monument in the Wentworth and Wilson deeds), since the old highway had been replaced by a two-lane paved road (State Highway 128). The new road curved and, at least according to Story, did not track exactly along the same path as the old dirt road, which was straight.

Both surveyors agreed it was not possible to tell exactly where the 1870 dirt road had been based on the location of the current paved highway alone. The two surveyors, however, made different decisions about how best to locate the centerline of the old road.

Brunner testified that the old road was not "lost" or "obliterated," as those terms are used by surveyors, and Story reluctantly agreed it was not "technically" obliterated. (See *Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 747–748 (*Bloxham*).) According

4

to Brunner, the only verifiable change in the road was an overlay of pavement which remained from a construction project in the 1990's. Besides, Brunner concluded the curve in Highway 128 occurred in front of the Pina property, and the road was straight in front of Soda Rock.

Brunner located the centerline of the old public highway using a 1988 survey by Neal Campbell that established the boundary between two nearby parcels, and a 1995 deed to the Pina property, which located the centerline of the road as of 1950. Brunner measured his point of beginning from an iron pipe that had been set by Campbell during his survey. Using this method, Brunner was required to survey a distance of 32.8 feet to find the centerline of the old road. Since the Campbell survey and Pina deed located the centerline of the road prior to the changes made in the 1990's, Brunner concluded the later changes to the road were not material. Brunner located what he considered to be the centerline of the dirt road as of 1870, and he took all the rest of his measurements from that centerline (which marked the northeast corner of the Wilsons' property).

Convinced the centerline could not accurately be determined from other monuments, Story chose as the starting point for his survey a pasture fence that remained standing as the only monument identified in the Wentworth deed still intact. Story believed the existing pasture fence was in the same location as it had been in 1870 because the fence appeared to be "ancient." Measuring from the point where that fence crossed the Trimble property line,[2] Story surveyed a distance of 1672.44 feet southwest along the Trimble property line (a number derived from the handwritten Trimble survey from 1885) to identify the northeast corner of the Soda Rock property. He surveyed the other boundaries from that point.

---

[2] In 1870, when Cyrus Alexander deeded the Wentworth property to F.G. Wentworth, a nearby parcel had already been deeded to William Trimble. The controlling description of Trimble's land dates back to an official survey of Trimble's land in 1885 (Trimble survey).

5

In establishing his boundary, Story relied on the Trimble survey. Story did acknowledge the Pina deed referenced the centerline of the road as of 1950, but he did not believe it was possible to know whether that was also the centerline as of 1870.

Brunner, however, found an unacceptable degree of error in the 1885 Trimble survey and testified it was unreliable for purposes of locating the centerline of the road, in part because the surveying instruments and measurements from 1885 were not reliable enough. Brunner criticized Story's survey as having used an "inappropriate method." And he thought measuring 1672.44 feet was too long a distance to establish an accurate beginning point for the survey.

Because they used different methods of locating the centerline, Brunner found the northeast corner of the Soda Rock property was 9.41 feet farther northeast from the corner identified by Story, which also pushed the disputed property line to within a few feet of the rear wall of the winery. Brunner's survey located the disputed property line 9.38 feet northeast of where Story located it at the northwest corner of the Wilsons' property (near where the winery was located), which left insufficient room for the Wilsons to have access for continued construction or to receive deliveries through the rear doors.

Another surveyor, James Crabtree, who had over 30 years' experience, also testified as an expert on behalf of Belle Terre, concurring with Brunner's survey. He opined that Brunner used more reliable evidence to locate the property line. He also agreed that the Trimble survey should not have been relied upon because it had a large degree of error. And he testified that the line of trees behind the winery was relevant as a line of occupation in determining the boundary.

In addition to Story's testimony, defendants presented an expert, Robert Curtis, who, through a videotaped deposition, testified the Story survey was correct.

Dick and another witness, David Demostene, who had grown up on the Soda Rock property, testified that as children in the 1940's they believed the cattle fence that ran along the line of oak trees marked the border between the two properties. The cattle

6

fence had been taken down long before the Wilsons bought Soda Rock, but the line of trees remained.

The Soda Rock property had belonged to Demostene's grandparents in 1943, when Demostene and his parents moved onto the property. After his grandparents died, it passed to his mother and her siblings. Demostene's father was a winemaker who operated the Soda Rock winery while he lived on the property, and Demostene assisted with the winemaking. Demostene lived on the property until 1957 and continued to work as a winemaker there until 1972. During the time he was involved, the winery did not use the back avenue for deliveries or any other purpose. The doors at the back of the winery at that time opened inward and were used only for ventilation, not for deliveries. In fact, at that time the doors could not have been opened outward or they would have collided with the cattle fence.

After soliciting proposed statements of decision from the parties, the trial court tentatively accepted the 2008 Brunner survey as establishing the correct boundary. Following a hearing on the Wilsons' objections to the Proposed Statement of Decision, the court issued an Amended and Final Statement of Decision (statement of decision) in favor of Belle Terre on September 7, 2012. The court found "the Brunner survey most closely aligns with the language contained in the original Deed creating the subject parcel and, as such, most closely follows the original intent of the parties." The statement of decision noted that Brunner's location of the property line corresponded closely with the location of the cattle fence that had once existed along the line of oak trees.[3] The court also found "very little evidence, if any, . . . to indicate that the actual centers of the historic route of Highway 128 and the current route of Highway 128, at least as of the time of the 1988 [Campbell Survey], differ in any significant detail."

---

[3] The "cattle fence" and the "pasture fence" are two different fences. The cattle fence was attached to the oak trees at some points and at other places was free-standing.

7

Judgment quieting title was entered October 1, 2012. The court also permanently enjoined the Wilsons from trespassing on Belle Terre's property. It awarded Belle Terre nominal damages of $1 on the trespass claim and an unspecified amount of attorney fees.

After judgment was entered, Belle Terre moved to fix the amount of attorney fees to which it was entitled. The court held a hearing and on December 21, 2012, it ordered a fee award of $116,920 under section 1021.9.

The Wilsons appealed from the judgment. They argue that the trial court erred in admitting extrinsic evidence, admitting Brunner's testimony, failing to follow accepted principles of deed construction, denying the Wilsons a prescriptive easement, finding the Wilsons liable for trespass on a theory of respondeat superior, and awarding Belle Terre its attorney fees. We conclude there was no reversible error with respect to the court's order adjudicating the parties' property rights, granting an injunction against future trespass, or awarding nominal damages for past trespass. We conclude, however, that the award of attorney fees must be reversed.

## II. DISCUSSION

### A. Admissibility of extrinsic evidence

The Wilsons contend the trial court erred in finding the boundary to be as described by the Brunner survey because it improperly considered extrinsic evidence, specifically: (1) the testimony of Dick and Demostene regarding their understanding of the location of the property line; (2) evidence of the state of mind of the parties, including prior conversations between Wilson and Dick; and (3) evidence of the use permit obtained by the Wilsons.

#### 1. The Dick and Demostene testimony about the property line

The Wilsons cite the parol evidence rule as prohibiting the testimony of Dick and Demostene: "Where the language of a deed is plain, certain, and unambiguous, the surrounding facts and circumstances will not be considered." (*Pinsky v. Sloat* (1955) 130 Cal.App.2d 579, 588.) "Parol evidence is not admissible to add to, detract from, or vary the terms of a deed." (*Ibid.*) But the parol evidence rule does not govern this case. The present action is not one pertaining to the accuracy of a property description in a deed.

8

No one disputed that the deed description was correct or tried to "add to, detract from, or vary the terms of a deed." (*Ibid*.) Rather, the parties' dispute revolved around locating on the ground the boundaries described in the deed. (See *Bloxham, supra,* 228 Cal.App.4th at pp. 737–738.) Both expert and nonexpert testimony is admissible to prove the location of "monuments, corners or lines as actually laid out on the ground by the official surveyor." (*Id*. at p. 737.) Such testimony "is not accepted for the purpose of varying or contradicting the terms of the deed, but to aid the trial court in its difficult task of translating the words of the deed into monuments on the surface of the earth . . . ." (*Richfield Oil Corp. v. Crawford* (1952) 39 Cal.2d 729, 741.) We do not see the testimony of Dick and Demostene as raising a parol evidence issue.

The testimony of Dick and Demostene was also relevant to the "lines of occupation," which Crabtree testified gave him an extra level of comfort with the Brunner survey. Brunner, too, testified about the importance of the line of trees in determining boundaries otherwise in doubt.

We conclude the testimony was admissible under general principles of relevance, and the court considered it as evidence of the historical beliefs of adjoining landowners as to where the boundary lay: "the adjacent landowners treated [the fence] as the property line for decades prior to this litigation." This did not violate the parol evidence rule. (See *Williamson v. Pratt* (1918) 37 Cal.App. 363, 367 ["the construction placed upon a description in a deed, as shown by the acts and conduct of the grantor and his grantees, and the manner in which they have exercised their respective rights under their deeds for long periods of time with relation to a boundary line, is entitled to the gravest consideration in the determination by a court of the location of such line"].)

2. The state of mind of Wilson and Dick

The trial court also admitted evidence of two conversations between Wilson and Dick: one, in 2002, in which Dick agreed to "accommodate" the Wilsons' use of the avenue in connection with the winery remodel; and a second in 2008, in which Dick and Wilson discussed the boundary issue and first discovered they had a boundary dispute. In

addition, the court considered Wilson's testimony that he did not give Dick a copy of the Story survey prior to 2008.[4]

As for the 2002 conversation, Wilson was the one who testified to that interaction. Dick could not remember the conversation and on that basis testified it did not occur. The Wilsons cannot now be heard to object to the significance the court attached to it. That evidence was also relevant to the Wilsons' prescriptive easement claim in that it showed the Wilsons' use of the avenue as of 2003 was permissive.

Likewise, evidence of the 2008 conversation was relevant to the prescriptive easement issue because it showed that the Wilsons first made a claim to the property in 2008. Together with the 2002 conversation, this evidence supported an inference that prior to 2008 the Wilsons' use of the avenue was permissive. The court further observed that Wilson's failure to give Dick a copy of the Story survey reflected unfavorably on his "credibility and reliability." There was no error in admitting any of the foregoing evidence.

3. The use permit

The court also admitted and considered the terms of the use permit obtained by the Wilsons in February 2004. The Wilsons objected to introduction of any evidence regarding the use permit on the ground it was irrelevant. As Belle Terre points out, a quiet title action and request for injunction are equitable in nature, and such evidence was relevant to proving the equities between the parties.

The permit required the Soda Rock property to be accessed from Highway 128, rather than from Soda Rock Lane. It thus lent credence to Brunner's conclusion about the location of the property line. The court found the conditions of the use permit tended to show the Wilsons did not own any part of the avenue, for if they did "the county would have no legitimate or plausible reason for denying vehicular access to the subject winery . . . ." The Wilsons' violation of the use permit was also relevant to the trespass claim.

---

[4] There was no objection to this testimony in the trial court.

10

The evidence was not irrelevant. The Wilsons have not demonstrated error—much less reversible error—in its admission.

## B. Admission of Brunner's testimony

The Wilsons further claim the trial court erroneously admitted Brunner's testimony because it was based on assumptions not supported by the record. They objected to this evidence at trial. They claim the assumptions underlying Brunner's survey were so speculative that his reliance on them made his testimony inadmissible, not just worthy of less weight, citing our prior decision in *Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222, 1235 (*Casey*).

*Casey* is not controlling here. *Casey* dealt with a claim for alleged asbestos-related injury by a plumber's surviving spouse. (*Casey, supra*, 206 Cal.App.4th at p. 1225.) The plumber had testified at his deposition that he did not know whether the construction sites on which he worked actually contained asbestos. (*Id.* at pp. 1225–1226.) Plaintiff sought to supply the missing proof through an expert's declaration that merely stated an assumption that the construction sites had contained asbestos. The expert's assumption was based solely on a presumption under Occupational Safety and Health Administration (OSHA) regulations that asbestos-containing materials were present in buildings constructed during the relevant time period. (*Id.* at p. 1226.) The trial court, ruling on a summary judgment motion by the defendant, excluded the declaration. (*Id.* at p. 1228.)

On appeal, we held the trial court did not abuse its discretion in refusing to admit the expert's declaration because his opinion "was based on assumed facts . . . without any foundation for concluding the assumed facts exist in the instant case." (*Casey, supra*, 206 Cal.App.4th at p. 1235.) The declaration consisted of "conjecture based upon inferences flowing from the generalities embodied in the OSHA regulations," which was of "scant evidentiary value." (*Ibid.*) We acknowledged that "exclusion of expert opinions that rest on conjecture or surmise is an inherent corollary to the foundational predicate for admission of expert evidence." (*Ibid.*) But that was a very different situation from the one in the present appeal.

11

Brunner is a professional land surveyor with 40 years of experience who has performed some 2,500 to 3,000 surveys. He was qualified as an expert at trial and his testimony was admitted as expert testimony. (*Richfield Oil Corp. v. Crawford*, *supra*, 39 Cal.2d at p. 741; *Bloxham*, *supra*, 228 Cal.App.4th at pp. 737–738.) In fact, the Wilsons made no objection when the court qualified Brunner as an expert.

Unlike the expert in *Casey, supra*, 206 Cal.App.4th 1222, Brunner supported his opinions with facts—not conjecture—and fully explained the reasons for his ultimate location of the boundary. Expert testimony is usually admitted on both sides in a boundary dispute, with the trier of fact weighing the evidence and its credibility to decide which surveyor's method most reliably located the boundary. (See *Bloxham*, *supra*, 228 Cal.App.4th at p. 738.) Any weaknesses in the surveyor's methods go simply to the weight to be given to the testimony. (*Id.* at pp. 738–739.)

Indeed, the Wilsons' argument seems directed more to proving Brunner was wrong than to showing his opinion was inadmissible. To the extent they argue his conclusions were wrong or his methods flawed, we are governed by the substantial evidence rule. (*Bloxham*, *supra*, 228 Cal.App.4th at p. 739 ["the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact"].) There was clearly substantial evidence to support Brunner's conclusions, including the supporting expert testimony of Crabtree. The trial court specifically found Brunner and Crabtree persuasive and found Story and his employer, Curtis, were not persuasive. The Wilsons have not shown judicial error.

## C. Deed construction

The Wilsons also claim the trial court's decision violated the following principles of deed construction: (1) Monuments are entitled to primacy in deed construction only if they are "known [or proved] to be the actual monuments of the survey." (2) If an actual monument no longer exists, a court must, if possible, establish its approximate location from other monuments referenced in the original description. (3) Courts will give effect to every part of the description, if possible.

12

The court determined that the centerline of the old highway still existed as a monument from the Wentworth deed and could most reliably be located in the manner adopted by Brunner. Again, the Wilsons' arguments are really aimed at proving the Brunner survey was wrong and the Story survey was right. Once again, we are constrained to apply the substantial evidence rule, and in so doing find substantial evidence to support the trial court's findings and conclusions.

## D. Prescriptive easement

The Wilsons next claim that even if the trial court's decision about the property line must stand, it erred in rejecting their prescriptive easement claim. Because they used the strip of land behind the winery building to repair the building and to access its back doors for more than five years before Belle Terre filed its lawsuit, they contend they were entitled to a prescriptive easement.

First, we note that the Wilsons did not plead their entitlement to a prescriptive easement as an affirmative defense, which is reason enough to deem the claim waived. (*Hatton v. Gregg* (1906) 4 Cal.App. 542, 546; see generally *Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 813 [" 'A party who fails to plead affirmative defenses waives them.' "].)

But even on the merits, the Wilsons' claim is unpersuasive. The elements of a prescriptive easement are open and notorious use, which is continuous and uninterrupted for five years and adverse to the land's owner. (*Grant v. Ratliff* (2008) 164 Cal.App.4th 1304, 1308 (*Grant*).) Each of these elements is a question of fact. (*O'Banion v. Borba* (1948) 32 Cal.2d 145, 150 (*O'Banion*).)

The trial court denied the Wilsons' claim because (1) prior to 2008, there was no evidence the Wilsons had ever made a statement to Belle Terre claiming ownership of or a right to use the disputed strip of land, and (2) there was no evidence the Wilsons had "cared for or maintained the territory (avenue) in dispute." (See Civ. Code, § 845.)

The Wilsons suggest they never requested and were never granted permission to use the avenue. They admit, however, that sometime in 2002 or 2003 Dick expressed "a generalized desire to be accommodating about the construction work at Soda Rock."

13

That admission alone shows the Wilsons' use of the disputed strip of land was not adverse, but rather permissive. Permissive use, however long, cannot ripen into a prescriptive easement. (*Matthiessen v. Grand* (1928) 92 Cal.App. 504, 509.) Based on the evidence, it appears the Wilsons' claim became adverse to Belle Terre's only in 2008, and they therefore did not meet the five-year use requirement.

The Wilsons argue there is a presumption that their use of the avenue was adverse to Belle Terre all along, and the burden therefore shifted to Belle Terre to prove their use of the avenue was not adverse. (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 571–572; but see *O'Banion*, *supra*, 32 Cal.2d at pp. 148–150; *Grant*, *supra*, 164 Cal.App.4th at pp. 1308–1309.) Even assuming such a presumption applies, the burden of persuasion remains with the party claiming the prescriptive easement and must be by clear and convincing evidence. (*Grant, supra*, at p. 1310; *Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 938.)

Belle Terre has met any burden it might bear by adducing evidence that Dick allowed the Wilsons to use the avenue for their construction work as a neighborly accommodation. The Wilsons' claim of a prescriptive easement was properly rejected.

## E. Propriety of injunctive relief

### 1. Irreparable harm to Belle Terre

Next, the Wilsons claim the trial court improperly awarded injunctive relief to Belle Terre because the court failed to consider the likelihood of irreparable harm in the absence of an injunction. The Wilsons point out that under Story's survey, Belle Terre would still have a vineyard avenue more than 20 feet wide. They further claim Belle Terre presented no evidence that it "ever used the disputed strip between Story and Brunner's boundaries or that it has any need whatsoever to do so."

Belle Terre responds that a trespass of a continuing nature affords a sufficient basis for injunctive relief because it could otherwise only be remedied by a multiplicity of actions. (*State of California v. Hansen* (1961) 189 Cal.App.2d 604, 611.) The prospect that the Wilsons' use of the avenue could ripen into a prescriptive easement provides another factual basis for the conclusion that Belle Terre would suffer irreparable harm in

14

the absence of an injunction. (*Fairrington v. Dyke Water Co.* (1958) 50 Cal.2d 198, 201.)

    2.  Balance of hardships

The Wilsons further argue that the balance of hardships tips in their favor. Belle Terre points out that this issue was not argued at the time of trial and was therefore waived. The record confirms that the Wilsons first raised this issue in their objections to the court's tentative ruling and proposed statement of decision. The court deemed the issue waived. We agree the claimed error has been waived. But even if we were to review the Wilsons' claim on the merits, the grant of an injunction is subject to an abuse of discretion standard of review. (*Krumme v. Mercury Ins. Co.* (2004) 123 Cal.App.4th 924, 946; *Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.) We see no basis for reversal under that standard.

The Wilsons claim they must have access to the rear of their winery for "essential aspects of its operation," alleging they redesigned and rebuilt their winery "on the good faith assumption that access would be available." If Brunner's survey were affirmed as correct, the Wilsons claim they will be precluded from fully opening the rear double doors of their winery, making deliveries through those doors impossible, and potentially requiring a redesign of the winery building.

They argue that Belle Terre, on the other hand, would be inconvenienced only slightly if an injunction had been denied, and would still have a wide enough avenue to allow a tractor to enter for purposes of servicing the vineyard, even if the Wilsons were allowed to continue using the nine-foot strip in dispute.

While it cannot be doubted that the Wilsons would find it more convenient to continue using Belle Terre's avenue for deliveries, that is insufficient reason to deny Belle Terre the injunction to which it is otherwise entitled. "Deprivation of a substantial benefit . . . falls short of the imposition of substantial hardship." (*Fairrington v. Dyke Water Co.*, *supra*, 50 Cal.2d at p. 200.) Rather, "proof of irreparable injury is a necessary element of a defense based upon a balancing of conveniences." (*Ibid.*; see *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 758–760 [" 'greatly disproportionate' hardship"].)

15

As for the Wilsons' claim that Belle Terre did not establish its own need to use the nine-foot strip, Dick testified to Belle Terre's need to use the avenue to turn its equipment in working its vineyard. Dick also testified there were occasions when his own workers were unable to turn around Belle Terre's equipment in the avenue because construction trucks, equipment or debris was blocking the way. Given this testimony, there is no merit to the Wilsons' theory that Belle Terre simply did not need the nine-foot strip.

The court found that "defendants intentionally and repeatedly encroached on plaintiff's land. In fact, despite numerous warnings by plaintiff, defendants used a portion of plaintiff's property as defendants needed under the circumstances. The equities strongly favor plaintiff as it has a right to the peaceful ownership, use and enjoyment of its own property, without interruption by adjoining landowners. [¶] The court sees no need to balance the equities any further between the lawful use and enjoyment of one's land on the one hand and the unlawful use of another's land on the other hand." That finding is sufficient to address the issue.

3. Laches

The Wilsons further contend Belle Terre was guilty of laches in allowing the Wilsons to use the disputed strip of land for approximately seven years before informing them that Belle Terre claimed ownership. Again, Belle Terre points out that this affirmative defense was not pled, proved or argued at trial. Though the Wilsons requested findings on the elements of laches in their objections to the court's tentative ruling and proposed statement of decision, the court made no findings on the laches defense.

As an affirmative defense, laches must ordinarily be pleaded. (*San Bernardino Valley Audubon Society v. City of Moreno Valley* (1996) 44 Cal.App.4th 593, 608.) Thus, in *City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1292, the court concluded that, because the defendant failed to request that the statement of decision address the issue of laches, the defendant waived its right to object on that basis on appeal. The same is true here.

16

The evidence suggests that the Wilsons' use of the avenue was permissive for the first several years of their winery renovation. Wilson himself testified that Dick told him he would "be glad to accommodate [Wilson] . . . for being a good neighbor to have access to repair the building." Belle Terre was not aware that the Wilsons were claiming ownership of the nine-foot strip of land until 2008, when Wilson first told Dick that he believed the boundary was nine feet southwest of the line of trees. Belle Terre then conducted its own investigation and filed suit in 2009. There was no unreasonable delay.

## F. The Wilsons' liability for trespassing

The court awarded nominal damages to Belle Terre for the Wilsons' past trespasses. The Wilsons claim the court erred because it held them vicariously liable for the trespasses of workers who used the avenue in connection with the renovation of the winery building without any proof that those workers were employees of the Wilsons or that they were acting within the scope of their employment.

We reject the Wilsons' premise that the court's ruling rested on a theory of respondeat superior, as the statement of decision does not mention that doctrine. Nor was there any need to rely on such a theory. On the contrary, trespass may be committed by "personal intrusion of the wrongdoer or by his failure to leave; by throwing or placing something on the land; or by causing the entry of some other person." (*Martin Marietta Corp. v. Insurance Co. of North America* (1995) 40 Cal.App.4th 1113, 1132; CACI No. 2000.)

The court found that Belle Terre met its burden of proving the Wilsons intentionally, recklessly or negligently entered Belle Terre's property or caused another to do so. This finding was supported by substantial evidence. (See *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 278.) A photographic exhibit showed the Wilsons' construction equipment entered not only the nine-foot disputed strip of land, but even beyond that to a part of the avenue as to which Belle Terre's ownership is not disputed. There was evidence the Wilsons continued to trespass on Belle Terre's property even after Belle Terre's lawyer sent them a letter demanding that they cease. Dick testified that he put in stakes to mark the boundary according to the Brunner survey,

17

and the stakes were pulled up and strewn about the avenue.  Trucks engaged in the Wilson remodel were photographed trespassing on Belle Terre's property even past the nine-foot disputed area, and a dumpster used for the Wilson construction was placed over the nine-foot line.  Dick testified that the Wilsons discharged what appeared to be "gray water" onto Belle Terre's property and also destroyed a wildlife habitat.  A construction worker from Soda Rock also was seen trespassing into Belle Terre's vineyard.  The Wilsons argued there was "no evidence" linking the work performed by "unidentified construction workers" with the Wilsons' land or improvements, but the court called this argument "patently absurd," and we agree.

### G. Nominal damages

The Wilsons contend Belle Terre was not entitled to nominal damages because Belle Terre's complaint requested only equitable relief and Belle Terre did not raise the issue of nominal damages until closing argument.  The Wilsons claim that if they had known about the damages request from the outset they could have asserted their right to a jury trial.

The trial court here found Belle Terre did not waive any damage claim by failing to specify a request for damages in its prayer for relief.  We agree.  Belle Terre's decision to forgo requesting damages did not bar the award of *nominal* damages.

"For every trespass upon real property the law presumes nominal damages." (*Empire Co. v. Bonanza Co.* (1885) 67 Cal. 406, 409; *Davidson v. Devine* (1886) 70 Cal. 519.)  "[A]n action for trespass will support an award of nominal damages [even] where actual damages are not shown."  (*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1406; accord, *Allen v. McMillion* (1978) 82 Cal.App.3d 211, 219.)  Because property owners possess a " 'dignitary interest in the inviolability' " of their property rights (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1352), "every trespass is an invasion of a legal right of another and carries with it the right to nominal damages." (*Costerisan v. Melendy* (1967) 255 Cal.App.2d 57, 60.)  Indeed, there is some authority to the effect that there must be an award of at least nominal damages, or the judgment is considered "incomplete" and subject to reversal.  (*Ibid*.)  "Damages, even though nominal, are considered necessary to

18

support a judgment in a trespass tort action since it is essentially an action for damages." (*Ibid*.; but see *Fields v. Napa Milling Co.* (1958) 164 Cal.App.2d 442, 448 [nominal damages need not be awarded where no actual loss has occurred].) And it is equally true that a "trespass without injury will justify *only* nominal damages." (*Cornell v. Sennes* (1971) 18 Cal.App.3d 126, 136, italics added.)

In light of these authorities, the court did not err in awarding nominal damages.

## H. Attorney fees

Based on the award of $1 in nominal damages, the trial court awarded Belle Terre attorney fees of $116,920 under section 1021.9, which provides: "In any action to recover damages to personal or real property resulting from trespassing on lands either under cultivation or intended or used for the raising of livestock, the prevailing plaintiff shall be entitled to reasonable attorney's fees in addition to other costs, and in addition to any liability for damages imposed by law."

In the present case, nominal damages were awarded without proof of actual injury to real or personal property. On the evidence presented, we reject Belle Terre's argument that the nominal damages might have been awarded based on an implied finding that actual property damage occurred, but the extent of injury or damages could not be determined. (*Avina v. Spurlock* (1972) 28 Cal.App.3d 1086, 1088.) There was no testimony as to any actual damages and there was only incidental and speculative testimony about some possible injury to Belle Terre's real or personal property. There was no testimony that Belle Terre incurred any expense to correct any problem caused by the Wilsons. Thus, the question raised is whether a nominal damages award, without proof of injury to the plaintiff's property, will support an award of attorney fees under section 1021.9.

Ordinarily the party awarded even nominal damages may be considered the "prevailing party" for purposes of a statute or agreement awarding fees to the "prevailing party." (*Western Decor & Furnishings Industries, Inc. v. Bank of America* (1979) 91 Cal.App.3d 293, 310–311.) However, the question in this case is not simply who is the prevailing party, but whether the award of nominal damages was one for "damages to

19

personal or real property," so as to trigger Belle Terre's entitlement to attorney fees under section 1021.9. Based on the plain language of the statute, we conclude an award of attorney fees is not available on the facts before us.

Nominal damages have been described as "symbolic" (*Davies v. Krasna* (1975) 14 Cal.3d 502, 513; *Price v. McComish* (1937) 22 Cal.App.2d 92, 100), and are often awarded "[w]here there is no loss or injury to be compensated but where the law still recognizes a technical invasion of a plaintiff's rights or a breach of a defendant's duty." (*Avina v. Spurlock, supra*, 28 Cal.App.3d at p. 1088.) In this case, plaintiffs did not present any evidence of damages to personal or real property nor were compensatory damages claimed in the prayer for relief. Thus, it appears the award of nominal damages in the trespass action was intended to redress intangible harm to the "dignitary interests" of the landowner personally, and not injury to the land or to his personal property. (Cf. *Intel Corp. v. Hamidi, supra*, 30 Cal.4th at p. 1352.)

The legislative history of section 1021.9 supports our conclusion that nominal damages do not support an award of attorney fees. Originally enacted in 1986, section 1021.9 was intended to give agricultural landowners and ranchers a meaningful remedy for damage caused by trespassers breaking through fences to take motor vehicles onto private property. (*Starrh & Starrh Cotton Growers v. Aera Energy LLC* (2007) 153 Cal.App.4th 583, 607–608 (*Starrh & Starrh*); *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1373–1374; *Haworth v. Lira* (1991) 232 Cal.App.3d 1362, 1368–1371 [discussing legislative history and concluding statute applies to noncommercial ranchers].) The statute was intended " 'to enhance the ability of ranchers to sue trespassers for damages, particularly in those cases where the rancher must now either compromise a significant portion of a valid claim by suing in small claims court . . . or by spending a major share of the recovery to pay his or her attorney.' " (*Starrh & Starrh, supra*, at p. 608.)

In this case, however, the parties were primarily litigating a boundary dispute upon which the trespass claim depended. Although the Wilsons' acts of trespass onto Belle Terre's land arguably support an award of nominal damages, there is no evidence of any

20

actual damage to Belle Terre's property that would trigger the provisions of section 1021.9.

In cases falling within the intent of the statute, there must be some tangible harm done to real or personal property as a result of the trespass. The phrase "damages to personal or real property" is most reasonably read as requiring proof of some *actual, compensable injury* to real or personal property before an attorney fee award may be made. Here, Belle Terre neither requested damages in its prayer, nor offered proof of any damage to its property. Accordingly, the award of attorney fees must be reversed.

### III. DISPOSITION

The judgment is affirmed insofar as it quiets title, grants injunctive relief against future trespass, and awards nominal damages, but the order awarding attorney fees is reversed. The parties shall bear their own costs on appeal.

_____  
                        Bolanos, J.*

We concur:

_____  
  Reardon, Acting P.J.

_____  
  Rivera, J.

* Judge of the San Francisco City and County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22

**Trial Court:**  Sonoma County Superior Court


**Trial Judge:**  Honorable Arthur A. Wick


**Attorneys:**

Kohut & Kohut, Richard A. De Liberty for Defendants and Appellants.

Passalacqua, Mazzoni, Gladden, Lopez & Maraviglia,
Lourdes Lopez for Plaintiff and Respondent.

