Filed 3/23/20; Certified for Partial Publication 4/2/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LINDSAY KELLY, as Executor, etc.,<br><br>     Plaintiff, Cross-defendant and Respondent,<br><br>v.<br><br>GREGORY HOUSE et al.,<br><br>     Defendants, cross-complainants and Appellants. | A153735 & A153184<br><br>(Solano County<br>Super. Ct. No. FCS029760) |

Defendants, cross-complainants, and appellants Gregory and Jennifer House successfully sued respondent Lindsay Kelly's predecessors in interest, decedents Edward and Dana Foss, for interfering with the Houses' contractual option to purchase an agricultural parcel. In these consolidated appeals,[1] the Houses challenge the trial court's denial of statutory and contractual attorney fees. They also contend the court undervalued their damages for lost profits. We conclude the lower court erred in failing to award statutory attorney fees but properly denied the Houses' claim for contractual attorney fees. We also conclude the damages award is supported

---

[1] Kelly dismissed her appeal of the judgment in appeal No. A153184, after the Houses filed a cross-appeal in that action. We consolidate on our own motion that cross-appeal with the Houses appeal No. A153735.

1

by substantial evidence.  Accordingly, we affirm in part, reverse in part, and remand for a determination of reasonable attorney fees under Code of Civil Procedure section 1021.9 (section 1021.9)

**FACTUAL AND PROCEDURAL BACKGROUND**

Under well-established appellate principles, we recite the facts in the light most favorable to the judgment.  (*People v. Bogle* (1995) 41 Cal.App.4th 770, 775.)  The Houses own and operate a 40-acre organic farm in Dixon, adjacent to a 47-acre property (the Property) formerly owned by Paul Moller.  The farm's primary crop is Gala apples.  The Houses also maintain an agricultural consulting business and teach organic farm management at the University of California at Davis.

In 2002, the Houses entered into a six-year agricultural lease with Moller for 35 farmable acres of the Property.  These acres included a large field, a small field, and a corral area.  The lease was set to expire in December 2007.  Under the lease, the Houses agreed to transition the farmable parcel to certified organic status over a three-year period.  The lease included an option for a six-year extension "provided Lessor and Lessee agree to any modifications of terms requested by either party."  The lease also gave the Houses the right of first refusal of any offer to sell the Property during the term of the lease or any lease extension.  Over time, the Houses successfully converted the farmable acreage to certified organic status.  The farmable parcel became an integral part of their own farm operation and they had every expectation that they would continue to farm the land into the future.  They were on good terms with Moller and were never delinquent on their rent payments.

In Spring 2007, Moller was facing a judgment lien of around $250,000.  With no notice to the Houses he decided to sell the Property, entering into a

purchase agreement with Dana and Edward Foss for $1.25 million. The transaction was a "cash out sale" requiring an initial deposit of $1,000, with an additional deposit of $224,000 to be paid on or before May 1, 2007. The "down payment" would be secured by a third deed of trust on the Property. After transferring the deposits to Moller, the Fosses recorded the deed of trust. The trial court later found that the $225,000 payment to Moller was a loan, and not a down payment on the Property.

The Fosses were both California real estate licensees. Moller had initially asked Dana Foss to help him find a buyer. When a potential buyer pulled out, the Fosses offered to buy the Property. Dana Foss prepared the purchase agreement, designating herself as the agent for both buyer and seller. The purchase agreement made the sale contingent on the sale of the Fosses' residence, which was reportedly "in escrow." At trial, however, Foss admitted her residence had never been placed in escrow. Effectively, then, the purchase agreement did not contain a fixed closing date.

In May 2007, Gregory House received a voicemail from Moller notifying him of the decision to sell the Property. House called Moller and reminded him that the lease contained a right of first refusal. Moller stated he had forgotten about that provision. He indicated he would be out of the country for the next three weeks. Moller then called Dana Foss to tell her about the Houses' right of first refusal. By this time, the Fosses had already transferred $225,000 to Moller.

House then called Dana Foss. She denied that she was Moller's agent and demanded to see the original copy of the lease. She faxed him a copy of the purchase agreement and told him in a cover letter that he would have one day to accept the offer and three weeks to make the $225,000 down payment. The purchase agreement she forwarded to House contained the requirement

3

that closing was contingent upon the sale of the Fosses' residence. She had not prepared a new purchase agreement with terms applicable to the Houses. Foss did not include any of the required supplemental statutory disclosures, and House was not offered the right to conduct a walk-through inspection.

Foss's cover letter contained several omissions and misrepresentations about the Fosses' agreement with the Mollers. For example, Foss asserted that Moller had been given only one day to accept the purchase agreement when in fact he was given a week. The cover letter represented that there was a three-week deadline to perform on the deposit when the purchase agreement provided for 30 days. She also suggested that the Houses would be unable to exercise their right of first refusal because the Fosses had already loaned money to Moller and taken out a deed of trust against the Property.

Four days later, the Houses sent a letter to Moller declaring their intent to exercise their contractual right to purchase the Property. They indicated they were working to secure financing to match the Fosses' offer. The Houses intended to acquire the Property to expand their apple production from their neighboring farm. Later, after seeing the Fosses move into a residence on the Property, Gregory House left two phone messages for Moller reiterating the Houses' intent to exercise their right of first refusal. He requested a meeting and asked for clarification regarding certain confusing terms contained in the purchase agreement. Moller did not respond.

On June 13, 2007, Jennifer House went to see Moller. He said he could not talk to her but revealed that the Fosses' attorneys were working on a strategy. Moller predicted there would be a lawsuit between the Fosses and the Houses over the right to purchase the Property. He indicated the Fosses

intended to offer things that the Houses could not match in order to prevent the Houses from acquiring the Property.

Five days later, Jennifer hand-delivered a letter exercising the right of first refusal provision along with a check for the initial $1,000 deposit called for in the purchase agreement. The Houses did not give Moller $225,000 because they understood only $1,000 was necessary to start the process and they were not going to risk that amount of money with no contract. However, they were taking steps to acquire all the necessary funds to complete the purchase. Moller rejected the Houses' offer in writing, stating that the required deposit was $225,000 per his agreement with the Fosses. The Houses filed a lawsuit against Moller for specific performance, breach of contract, and declaratory relief.

While the Houses' lease remained in effect, the Fosses entered the Property and sprayed nonorganic herbicides in the corral area of the farmable parcel, cut down several trees, and altered the corral fencing with prohibited paints. Edward Foss drove his pickup onto the large field and fenced off a one-acre portion. The Houses' attorney wrote to the Fosses warning them about the fragility of organic certification and insisting they not trespass on ground controlled by the Houses.

In June 2007, the Fosses filed suit against Moller and the Houses alleging claims for specific performance, negligent misrepresentation, declaratory relief, and to quiet title. In November 2008, the Houses filed a first amended cross-complaint against Moller and the Fosses, alleging claims for intentional interference with contractual economic relations, intentional interference with prospective economic advantage, trespass to land, conversion, and negligence. Moller later filed for bankruptcy and the case was removed to federal district court.

Following bankruptcy proceedings, the district court remanded the case to the superior court in April 2014. The Property was foreclosed on and sold to a third party in March 2015. Moller and the Houses settled their lawsuit.

After a bench trial, the trial court issued a tentative statement of decision finding the Fosses liable for inducing a breach of contract by improperly interfering with the Houses' right of first refusal. The court also found the Fosses had intentionally interfered with the Houses' prospective economic advantage by thwarting their plans to cultivate organic apples on the farmable parcel. The Houses also prevailed on their claims for conversion, trespass, and negligence.

The Houses sought $2,558,173 in total damages, primarily consisting of lost apple profits that would have accrued had they begun planting apple trees in Spring 2008. Relying on "all of the evidence presented during the trial," including a damages estimate prepared by Gregory House, the trial court found the Houses would have planted apple trees on the farmable acreage by 2009 and would have accrued $1.4 million in profits by 2016 had it not been for the Fosses' interference. Judgment was entered based on the tentative statement of decision. The Houses were awarded total compensatory damages of $1,669,705 and $1,000 in punitive damages.

The Houses filed a motion for attorney fees and costs. By then, the original trial judge had retired and the motion was heard by a successor judge. The court denied the motion, concluding the Houses had not demonstrated any right to statutory or contractual attorney fees. As to contractual fees, the court found the Houses were not signatories or intended third-party beneficiaries to the purchase agreement and they could not establish that the Fosses would have been entitled to attorney fees against *them* had the Fosses prevailed, a prerequisite for reciprocal application of

6

Civil Code section 1717. As for statutory fees, the court found section 1021.9, which authorizes attorney fees in agricultural trespass cases, inapplicable because they had not demonstrated that the trespass caused tangible harm to personal or real property. The Houses appeal in case No. A153735 from the denial of their request for attorney fees, and their cross-appeal in case No. A153184 challenges the trial court's calculate on of lost profits.

## DISCUSSION

### I. Timeliness Challenge is Forfeited

Before we turn to the merits of the Houses' attorney fee claim, we address Kelly's contention that the motion for attorney fees was untimely. She notes that California Rules of Court, rule 3.1702(b), provides that a motion for statutory attorney fees must be filed within the time allowed to file an appeal, i.e., generally within 60 days of notice of entry of the order, and asserts the Houses filed their motion a day late. The Houses counter that the Fosses did not raise this argument below and urge the contention has been waived on appeal. We agree. " 'An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below.' " (*Children's Hospital and Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 776.)

### II. Standard of Review

" ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213; accord, *Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1025–1026; see

7

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008)
162 Cal.App.4th 858, 894 ["the 'determination of the legal basis for an award
of attorney fees' is a 'question of law' which the reviewing court will examine
de novo"].)

## III. The Denial of Section 1021.9 Attorney Fees Was Error

### A. Relevant Authorities

Section 1021.9 provides: "In any action to recover damages to personal
or real property resulting from trespassing on lands either under cultivation
or intended or used for the raising of livestock, the prevailing plaintiff shall
be entitled to reasonable attorney's fees in addition to other costs, and in
addition to any liability for damages imposed by law." The statute is
intended to ensure that farmers are able to protect their land from
trespassers through civil litigation. (*Quarterman v. Kefauver* (1997)
55 Cal.App.4th 1366, 1370.) We conclude the Houses are entitled to attorney
fees under this statute.

At trial below, the Houses prevailed on all of their claims and were
awarded damages for trespass and conversion. The Fosses' trespasses
included boarding their own animals on the farmable parcel, painting the
corrals, disk-plowing the fields, applying prohibited pesticides, and cutting
down oak and buckeye trees cultivated by the Houses. These incursions
resulted in the loss of the Houses' certified organic status. The trial court
awarded damages for the trespass, including $65,730 in lost corral rental
income, $7,725 in lost small field rental income, $10,000 in lost sheep forage,
and $1,500 for organic recertification. However, following the entry of
judgment, the successor trial court judge concluded the Houses were not
entitled to attorney fees because they had not shown any "tangible harm to
personal or real property caused by the trespass" as required under *Belle*

8

*Terre Ranch, Inc. v. Wilson* (2015) 232 Cal.App.4th 1468, 1477 (*Belle Terre*). The trial court erred.

*Belle Terre* concerned a boundary dispute between a vineyard and a neighboring winery. The rear of the winery's building backed up to the vineyard, with a pathway in between. (*Belle Terre, supra*, 232 Cal.App.4th at p. 1470.) The winery's owners regularly used the pathway to access the building during renovations. The vineyard's owner initially did not object to the use but became concerned when a cement truck kicked up dust that settled on his grape vines. The parties could not agree on the boundary between their properties and the vineyard's owner filed a complaint to quiet title as to the disputed strip of land and for trespass. The complaint did not seek damages. (*Id.* at p. 1472.) After trial, the trial court entered judgment quieting title. It permanently enjoined the winery from trespassing on the vineyard's property and awarded the vineyard $1 in nominal damages for trespass and $116,920 in attorney fees under section 1021.9. (*Belle Terre*, at p. 1475.) The winery appealed.

In reversing the attorney fee award, the appellate court noted the trial court had awarded only nominal damages because the vineyard had not offered proof of actual injury. (*Belle Terre, supra,* 232 Cal.App.4th at p. 1476.) The court concluded this type of award did not support the recovery of attorney fees under section 1021.9. While the winery was the prevailing party, nominal damages did not qualify as "damages to personal or real property." (*Belle Terre*, at pp. 1476–1477.) The court explained: "In cases falling within the intent of the statute, there must be some tangible harm done to real or personal property as a result of the trespass. The phrase 'damages to personal or real property' is most reasonably read as requiring proof of some *actual, compensable injury* to real or personal property before

9

an attorney fee award may be made." (*Id.* at p. 1477.) Because the winery had not presented any evidence of damages to personal or real property and had not prayed for any compensatory damages, attorney fees were not obtainable under section 1021.9. (*Belle Terre*, at p. 1476.)

*Belle Terre* is readily distinguishable from the present case. Unlike the vineyard, the Houses prayed for compensatory damages in their amended cross-complaint and were awarded $83,455 in damages for trespass. While a portion of the damages award consisted of lost rental income, the Houses offered evidence of tangible harm to the farmable parcel, including the removal of trees, the Fosses' use of prohibited chemicals, and other trespasses that resulted in the destruction of the farmable acreage's organic certification status and the destruction of animal forage. Accordingly, unlike the facts of *Belle Terre,* the Houses demonstrated concrete injury to real or personal property. The Houses were entitled to attorney fees under a plain reading of section 1021.9.

Kelly challenges the factual basis for the trial court's award of damages for trespass, characterizing them as speculative and asserting it is undisputed the Houses did not suffer any actual damage to real or personal property during the term of the lease. She contends, for example, that the $10,000 award for lost sheep forage constituted only "nominal" damages. We disagree. The Houses suffered tangible economic harm—as reflected in a damages award of $83,455—due to trespasses which destroyed their organic certification status and animal forage and deprived the Houses of their use of the corral and small field. And, having abandoned her appeal of the judgment, Kelly is in no position to question the sufficiency of the evidence to support the trial court's damages findings or its determination that the Fosses had no legal right to possess the Property. (See *In re Marriage of*

10

*Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*) [the court's judgment is presumed correct on appeal and all intendments and presumptions are indulged in favor of its correctness].)

Kelly also asserts there was no evidence that the Houses were utilizing the land as they had never rented the corral and only intended to graze sheep in the future. She ignores the plain language of section 1021.9, which provides that statutory attorney fees may be recovered for trespass "on lands *either* under cultivation *or intended* or used *for the raising of livestock . . . .*" (italics added; see *Kelly v. CB & I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 465, disapproved on other grounds in *Sholes v. Lambirth Trucking Co.* (Feb. 20, 2020, S421825) ___ Cal.5th __ [2020 Cal. Lexis 948 at p. *39] ["[T]here is no requirement in [section 1021.9] that the property be used at the time of the wrong for raising livestock—the statute [provides] that the property be 'intended' for such use."].)

We reject for similar reasons Kelly's contention that statutory fees are not recoverable because the Fosses' trespass did not disrupt existing agricultural operations. *Hoffman v. Superior Ready Mix Concrete, L.P.* (2018) 30 Cal.App.5th 474 is instructive. In *Hoffman,* the plaintiffs owned a landlocked parcel on which they maintained a sizeable inventory of plants, intending to open a commercial nursery. The defendant trespassed and damaged five areas of the plaintiffs' parcel by constructing dirt berms that caused erosion and silt runoff onto the Hoffmans' property. (*Id.* at p. 479.) It was undisputed that the trespass did not disrupt any existing agricultural cultivation. (*Id.* at p. 481.) The trial court nevertheless awarded $16,178 in compensatory damages and $289,153 in attorney fees under section 1021.9. (*Hoffman*, at p. 481.) The appellate court affirmed, holding that "fees may be awarded under section 1021.9 for trespass on agricultural land being

11

cultivated, even where the defenAdanppAt did not damage crops themselves or interfere with agricultural operations." (*Hoffman*, at p. 484.) Here, the record establishes that the Fosses trespassed on the farmable parcel held under the Houses' lease and damaged land that was under cultivation and intended for animal foraging. That the trespass did not interfere with an active agricultural operation is not a bar to recovery of fees under section 1021.9.

## B. The Houses Did Not Forfeit Their Claim

Kelly also maintains that the Houses forfeited their claim for attorney fees under section 1021.9 because they sought to recover all of their attorney fees generated in this matter rather than limiting their request for fees incurred in connection with their trespass claim. Kelly further asserts that if the Houses are entitled to statutory fees, the award is subject to allocation because the vast majority of the issues addressed at trial did not relate to trespass but rather to the Fosses' interference with the right of first refusal.

" 'When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action. However, the joinder of causes of action should not dilute the right to attorney fees.' [Citation.] . . . Such fees need not be apportioned when incurred for representation on an issue common to both causes of action in which fees are proper and those in which they are not. [Citation.] Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 686–687.)

We need not address Kelly's forfeiture claim as the trial court found the Houses ineligible for attorney fees and did not address apportionment. Given the relatively small percentage of overall damages attributable to the Fosses' trespass, it is conceivable that not all of the attorney fees incurred in this matter are recoverable under section 1021.9. However, resolution of this question is best left to the trial court to determine in the first instance whether fee apportionment is appropriate under the circumstances. On remand, the Houses bear the burden of demonstrating the amount and reasonableness of their attorney fees and costs recoverable for trespass under section 1021.9. (See *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320.)

## IV. No Entitlement to Contractual Attorney Fees

The Houses assert that they are also entitled to attorney fees under a fee-shifting clause in the purchase agreement entered into by the Fosses and Moller. The trial court correctly found otherwise.

Civil Code section 1717, subdivision (a) provides, in part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." The statute "was enacted to establish mutuality of remedy where contractual provision makes recovery of attorney's fees available for only one party [citations], and to prevent oppressive use of one-sided attorney's fees provisions." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128.)

13

As a general rule, only parties to a contract containing an attorney fee provision are entitled to fees. "However, under some circumstances, the Civil Code section 1717 reciprocity principles will be applied in actions involving signatory and nonsignatory parties." (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 966; accord, *Mepco Services, Inc. v. Saddleback Valley Unified School Dist.* (2010) 189 Cal.App.4th 1027, 1046.) " ' "[I]n cases involving nonsignatories to a contract with an attorney fee provision, the following rule may be distilled from the applicable cases: A party is entitled to recover its attorney fees pursuant to a contractual provision only when the party would have been liable for the fees of the opposing party if the opposing party had prevailed." ' " (*Loduca v. Polyzos* (2007) 153 Cal.App.4th 334, 341; see *Hsu v. Abbara* (1995) 9 Cal.4th 863, 870; *Reynolds Metals Co. v. Alperson*, *supra*, 25 Cal.3d at p. 128.) Civil Code section 1717 "is meant to prevent 'oppressive use of one-sided attorney's fees provisions' [citation], not to abolish the general rule that each party pay its own attorney fees." (*Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 308.)

"Two situations may entitle a nonsignatory party to attorney fees. First is where the nonsignatory party 'stands in the shoes of a party to the contract.' [Citation.] Second is where the nonsignatory party is a third party beneficiary of the contract." (*Cargill, Inc. v. Souza, supra,* 201 Cal.App.4th at p. 966; see *Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1017–1018 [a "nonsignatory will be bound by an attorney fees provision in a contract when the nonsignatory party ' "stands in the shoes of a party to the contract" ' "]; *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC, supra,* 162 Cal.App.4th at p. 897 ["where a nonsignatory is sued on the ground that he stands in the shoes of a party to the contract, and where he would be liable

14

for fees if that claim succeeded, he may recover fees under [Civil Code] section 1717 if he defeats the claim"].)

The Houses' request for contractual attorney fees fails for several reasons. They do not contend, nor can they demonstrate, that they are third-party beneficiaries to the purchase agreement. The purchase agreement does not reference the Houses, much less contain terms that reflect an intent by the parties to benefit the Houses. (See *Harper v. Wausau Ins. Corp.* (1997) 56 Cal.App.4th 1079, 1087.) In particular, the attorney fee provision states that "in any action . . . involving a dispute between Buyer and Seller arising out of the execution of the Agreement or the sale . . . the prevailing party will be entitled to receive" reasonable attorney fees and costs. This provision clearly applies only to disputes between the buyer and seller arising out of the enforcement of the purchase agreement and does not confer any rights or benefits to third parties. In addition, the Houses have not demonstrated that the Fosses could have recovered attorney fees from *them* had the Fosses prevailed below. (See *Reynolds Metals Co. v. Alperson, supra,* 25 Cal.3d at pp. 128–129; *Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 679 [signatory cannot recover fees from nonsignatory unless nonsignatory could have recovered fees from signatory].)

Instead, they rely on *Lewis v. Alpha Beta Co.* (1983) 141 Cal.App.3d 29 (*Lewis*) for the proposition that an obligation to pay attorney fees to the prevailing party may arise where the two adverse parties have entered into separate agreements with a third party. In *Lewis,* Alpha Beta entered into a lease with a shopping center landlord. Because Alpha Beta did not sell alcoholic beverages at the time, the lease required that a liquor store operated by third parties should adjoin Alpha Beta's building. (*Id.* at p. 31.)

15

The Lewises entered into a separate lease with the landlord granting them the exclusive right to sell alcoholic beverages within the shopping center. Both leases contained attorney fee provisions. (*Ibid*.) When Alpha Beta posted a notice of intention to sell alcoholic beverages, the Lewises sued Alpha Beta and the landlord. The trial court enjoined Alpha Beta and allowed the Lewises to recover attorney fees from Alpha Beta based on the parties' leases. (*Id.* at pp. 31–32.)

In affirming the award, the *Lewis* court stated, "We believe [Civil Code section 1717's] provisions should also provide a remedy to individuals, such as the Lewises, who on the basis of their own lease, sue their landlord and a cotenant to enforce a restrictive covenant *assumed by the cotenant for their benefit in its lease,* when each such lease specifically provides for attorney's fees." (*Lewis*, *supra*, 141 Cal.App.3d at p. 33, italics added.) *Lewis* is distinguishable. The prevailing tenants were entitled to attorney fees from Alpha Beta where they successfully sued to enforce a restrictive covenant present in *both* leases—a covenant granting them the exclusive right to sell alcoholic beverages and entered expressly for their benefit. (See *ibid*.) As discussed above, no evidence has been presented here that the Houses were intended third-party beneficiaries under the purchase agreement.

The Houses also assert they are eligible for contractual attorney fees because in order to purchase the Property they would have had to perform under the written terms of the purchase agreement. But that is manifestly not the case. At trial, Gregory House was asked: "Did it ever cross your mind to simply create a document and attach the Moller-Foss agreement to it and just put, 'We accept,' and sign it? You and your wife?" Answer: "No." While it appears that the right of first refusal contemplated that the Houses would have to match certain terms in the purchase agreement, such as the

16

purchase price and initial deposit, the trial court never found that the Houses were under a legal obligation to perform under the purchase agreement. Indeed, certain terms, such as the requirement that the Fosses' residence be in escrow to consummate the sale, would have made no sense. In short, no authority supports their position that simply by exercising their right of first refusal and matching material terms and conditions of the Moller-Foss purchase agreement, the Houses were entitled to benefit from the purchase agreement's attorney fee provision.

## V.     Substantial Evidence Supports Damages Award for Lost Profits

In their cross-appeal, the Houses contend the trial court erred in calculating their damages for lost profits.[2] The court awarded $1,669,705 in damages, finding that the Houses "would have planted apple trees by 2009, resulting in harvestable organic apple crops beginning in 2011 and continuing annually, resulting in lost profits of $1,400,000. At trial, the Houses asserted they would have planted the trees in the Spring of 2008, resulting in harvests beginning in 2010. They claim the court's finding that they would have waited until 2009 is "inexplicable."

Our inquiry on appeal is whether the award is supported by substantial evidence, and the appellant bears the burden of demonstrating error in the trial court's determination. (*City of Salinas v. Souza & McCue Construction Co.* (1967) 66 Cal.2d 217, 225.) Substantial evidence in this context means such evidence as a reasonable fact trier might accept as adequate to support a conclusion; evidence which has ponderable legal significance, which is reasonable in nature, credible, and of solid value. (*United Professional*

_____

[2] Kelly has not filed a respondent's brief in the Houses' cross-appeal, so we "decide the appeal on the record, the opening brief, and any oral argument by the appellant." (Cal. Rules of Court, rule 8.220(a)(2).) The Houses waived oral argument on their cross-appeal.

*Planning, Inc. v. Superior Court* (1970) 9 Cal.App.3d 377, 393; *Estate of Teed* (1952) 112 Cal.App.2d 638, 644.)

While the trial court's statement of decision does not disclose why it found that the Houses would have waited until 2009 to plant the apple orchard, we must infer that the trial court impliedly made every factual finding necessary to support its decision. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48; see *Arceneaux, supra,* 51 Cal.3d at p. 1133.) " 'Appellate courts, . . . if there be any reasonable doubt as to the sufficiency of the evidence to sustain a finding, should resolve[] that doubt in favor of the finding.' " (*Brewer v. Simpson* (1960) 53 Cal.2d 567, 583.)

The occurrence and extent of lost profits may be ascertained with reasonable certainty from the working experience of the business, from its past volume and from other data reflecting probable future volume. (*Natural Soda Products Co. v. Los Angeles* (1943) 23 Cal.2d 193, 199; *Lucky Auto Supply v. Turner* (1966) 244 Cal.App.2d 872, 882.) "In these situations, trial courts must do the best they can and use all available facts to approximate the fair and reasonable damages under all of the circumstances." (*Green v. Superior Court* (1974) 10 Cal.3d 616, 639.) Our review of the record discloses that while there was sufficient evidence that the Houses would have realized profits from their proposed apple orchard, the evidence was mixed as to *when* the orchard would have been planted. The potential for delay was suggested by the amount of weeds growing on the land and the time needed to repair the parcel's broken deep-water well pump.

William P. Denevan testified for the Houses as an expert on the production and marketing of Gala apples. He said that apple orchards start generating income in the fourth year after planting, and generally speaking, it takes between seven to nine years for a grower to turn a profit. In order to

plant a new large apple orchard, a farmer will first test the soil and then plant a cover crop to naturally fumigate the soil and increase organic matter before the orchard is planted. Cover crops are seeded plants that tend to grow in a uniform pattern because of how the seeds are spread. One purpose of cover crops is to reduce weeds. If weeds are present a cover crop can be planted to choke them out, allowing an orchard to be planted the following year.

Gregory House testified that he used ripgut and downy brome as the cover crop for the farmable parcel. He did not consider them to be noxious weeds. When he learned the Property was for sale in May 2007, he planned to acquire it to expand his apple orchard. If he had secured ownership that fall, he would have been able to plant apple trees the following spring. Rather than using a seeded cover crop, he would have allowed his sheep to graze the existing vegetation and fertilize the soil in preparation for planting apple trees.

Notwithstanding House's optimistic timetable, evidence was admitted that by March 2008, over 90 percent of the farmable land was occupied by noxious weeds, including ripgut brome and downy brome. Paul Moller testified there was a serious weed problem on the land, and that according to his consultants, it was impossible to do much with the property because of the weed infestation. Photographs taken by Dana Foss in April 2007 showed the arable field was covered with weeds. Dana Foss testified that the weeds had matured to where they could not be ingested by livestock. She had the field disked after being advised that this was the only way to begin curtailing the weeds. Thus, evidence supported the trial court's finding that dealing with the weed situation and installing an apple orchard would have taken longer than Gregory House estimated.

Denevan also testified that a functioning water pump and an irrigation system would need to be in place to achieve the desired apple yields. The Houses had never used the farmable parcel's deep-water well. The well's pump had not been used for many years and it had to be fixed and reconnected to electricity before it could be used. After the Fosses acquired the leasehold in March 2008, they contacted PG&E to have the electricity turned on. The wiring had to be upgraded and the pump did not become operational until the fall of 2008, after the growing season was over.

The Houses assert that Dana Foss's testimony regarding the well is not determinative because the Fosses did not secure a lease until the Spring of 2008 and were on a different timetable. However, our task is not to resolve conflicts in the evidence, but rather to determine if the damages award is supported by substantial evidence. (*Huang v. Board of Directors* (1990) 220 Cal.App.3d 1286, 1294.) The trial court could have reasonably concluded from the testimony that House's proposed schedule—acquiring ownership in the fall of 2007 and planting apple orchards the following spring—was unrealistic in light of the expansive growth of mature and noxious weeds throughout the farmable acreage and a nonoperational water pump that required electrical upgrades. We conclude the court's computation of damages for lost profits is supported by substantial evidence.

## DISPOSITION

The order denying the Houses attorney fees under section 1021.9 is reversed. The matter is remanded to the trial court to calculate a reasonable attorney fee award under this provision. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal.

20

_____

Sanchez, J.

WE CONCUR:


_____

Humes, P.J.


_____

Banke, J.



*A153735/A153184  House v. Kelly*

Filed 4/1/20

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| LINDSAY KELLY, as Executor, etc., <br><br>     Plaintiff, Cross-defendant and Respondent, <br><br> v. <br><br> GREGORY HOUSE et al., <br><br>     Defendants, Cross-complainants and Appellants. | A153735 & A153184 <br><br>  Super. Ct. No. FCS029760) <br><br> ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION AND MODIFYING OPINION <br><br> [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on March 23, 2020, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

The first line at the top of page 12 should be changed to read: "cultivated, even where the defendant[s] did not damage crops themselves". The remainder of that paragraph is unchanged.

There is no change in the judgment.


Dated:                               _____

                                        Humes, P.J.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of sections I, II, IV, and V of the Discussion.

Trial Court:          Solano County Superior Court

Trial Judge:          Hon. D. Scott Daniels

Counsel:

Black Rice & Luna LLP, Robert N. Black, Autumn E. Luna for Plaintiffs, Cross-complainants, and Appellants.

Hayes, Scott, Bonino, Ellingson, Guslani, Simonson & Clause, LLP, Mark G. Bonino, for Plaintiff, Cross-defendant, and Respondent.